Commissioner of Public Welfare of the City of New York, Respondent, *v.* Herbert Koehler, Appellant.

Argued October 15, 1940; decided November 19, 1940.

*Sydney S. Snyder* for appellant.

*William C. Chanler,* Corporation Counsel (*Stanley Buchsbaum* and *Paxton Blair* of counsel), for respondent.

LEHMAN, Ch. J.  In proceedings instituted by the Commissioner of Public Welfare of the City of New York in accordance with the provisions of section 64 of the Inferior Criminal Courts Act (L. 1910, ch. 659, as amd.), the Court of Special Sessions has made an order adjudging the defendant to be the father of a natural child of one Margie Vincent and directing the defendant to pay the weekly sum of eight dollars for the support, maintenance and education of said child.  The mother of the child is a married woman, and,

though she was living apart from her husband for more than a year prior to the birth of the child, she was not separated from her husband pursuant to a judgment of a competent court. The Court of Special Sessions has jurisdiction " in proceedings to establish paternity and to provide for the support of natural children and of their mothers as set forth herein." (Inferior Crim. Ct. Act, § 60.) Upon this appeal the defendant contends that the evidence does not establish that the child born to Margie Vincent is a " natural child " as defined in the Inferior Criminal Courts Act, and on that ground he challenges the jurisdiction of the court to make the order appealed from. He also challenges the competency of the evidence and its sufficiency to prove that he is the father of the child.

The presumption of legitimacy, we have often said, is "one of the strongest and most persuasive known to the law." (*Matter of Findlay*, 253 N. Y. 1, 7.) At one time, as the court pointed out in that case, the presumption was conclusive " if a husband, not physically incapable, was within the four seas of England during the period of gestation." In such case the court would not " listen to evidence casting doubt on his paternity." Even now, though the ancient rule no longer is applied with the same rigor, " if husband and wife are living together in the conjugal relation, legitimacy will be presumed though the wife has harbored an adulterer " (p. 8). The presumption, however, may be shattered by evidence which establishes that there has been no possibility of access. Legitimacy, we have said there, " may even be presumed though the spouses are living apart if there is a fair basis for the belief that at times they may have come together " (p. 8). In *Matter of Findlay* (*supra*) the court thus said in effect that in accordance with well-established common-law rules a child, born to a married woman, " living in conjugal relation with her husband," must be presumed *conclusively* to be a child born in wedlock unless it appears that during the period of gestation the husband was physically handicapped, or that the spouses were living apart in manner which excluded any " fair basis for belief that they may have come together."

The statutory definition of a " natural child " as formulated in the Inferior Criminal Courts Act is " a child who is either begotten and born (a) out of lawful matrimony, (b) while the husband of its mother was separate from her for a whole year previous to its birth, (c) during the separation of its mother from her husband pursuant to a judgment of a competent court; or who is begotten at a time when the husband is impotent." (§ 61.)  The definition is formulated in almost exactly the same language as the statutory definition of a child " born out of wedlock " in section 119 of article VIII of the Domestic Relations Law (Cons. Laws, ch. 14), which is entitled " Support and Education of Children Born out of Wedlock, and Proceedings to Establish Paternity."  Prior to the enactment of that article, similar paternity proceedings had been authorized and regulated by the Code of Criminal Procedure and there the Legislature, in section 838, had used the same language to define a " bastard."  In judicial opinions, judges, according to their individual tastes or whims, had used indiscriminately the terms " natural child " or " child born out of wedlock " or " bastard " to describe a child whose father was not the mother's husband; and difference in the descriptive terms was not intended to carry any juridical consequences. The Legislature in different statutes enacted at different times has also used those terms indiscriminately to describe a child whose father is not the husband of the child's mother and the Legislature has conferred upon the Court of Special Sessions in the City of New York, and upon other courts elsewhere, jurisdiction in proceedings to establish the paternity of such a child for the purpose of compelling the father to pay for the child's support and education.

A " natural child " or a " child born out of wedlock " or a " bastard " as defined by the statutes is in effect a child born " out of lawful matrimony " or born to a married woman under conditions where, as stated in *Matter of Findlay*, the presumption of legitimacy is not conclusive and has been rebutted.  The statutory reference to a child born while the husband of its mother was " separate "

from her for a whole year means, it is plain, while husband and wife were living apart under conditions where there is no " fair basis for the belief that at times they may have come together." There is sufficient proof of that in this case and, when the court so found, it had jurisdiction to make the order appealed from.

In part, however, that proof consists of testimony given by the husband and the wife; and, in the absence of statute, " it is well settled that neither husband nor wife are competent to prove non-access during wedlock, whatever may be the form of legal proceedings, or whoever may be the parties thereto." (*Chamberlain* v. *People*, 23 N. Y. 85, 88; *Matter of Findlay*, 253 N. Y. 1.) The Legislature has provided that in paternity proceedings brought in the city of New York, " if the mother is married both she and her husband may testify to non-access." (Inferior Crim. Ct. Act, § 67, subd. 1.) Except in paternity proceedings, the common-law rule that husband and wife may not so testify remains in force. The exercise of the power of the Legislature to change ancient general rules of evidence is subject to challenge only upon the ground that the limitations placed upon the legislative power by the Constitution of the United States or the Constitution of the State of New York have been disregarded. The statute is challenged in this case on the ground that the attempted differentiation in the rules of evidence in paternity proceedings and the rules in other cases is unreasonable and deprives the defendant of the equal protection of the law guaranteed by the Constitution of the United States.

The statutory rule of evidence contained in section 67 of the Inferior Criminal Courts Act (formerly section 35-g, subdivision 1, L. 1930, ch. 434) was held unconstitutional and void by the Appellate Division of the first department in *Commissioner of Public Welfare* v. *Ladutko* (256 App. Div. 775; affd., without opinion, 281 N. Y. 655). In that case the Appellate Division said: " The statute which undertakes to effect a change in the common-law rule by allowing such proof within the city of New York while such testimony is

still inadmissible in the rest of the State, is based upon no reasonable ground for the distinction which it makes. Even in its application to New York city the challenged rule applies only at paternity trials had in the Court of Special Sessions, whereas the common-law rule remains unchanged for other courts in the city." The majority of the court, concurring in that opinion, voted to reverse the order made by the Court of Special Sessions " and dismiss the proceedings on the additional ground that the evidence in this case does not sustain the finding of the court that the defendant was the father of the complainant's child. The evidence offered to prove that fact was unsatisfactory and insufficient, particularly in view of the strong presumption of legitimacy."

Upon the appeal to this court, we accepted the conclusion of the Appellate Division that the evidence was unsatisfactory and did not overcome the strong presumption of legitimacy. Then, it was unnecessary to determine whether some of the evidence received was not only unsatisfactory but was also incompetent because the statute which purported to permit its introduction was unconstitutional. On that point we expressed no opinion. In the interval between the decision of the Appellate Division in that case and the affirmance by this court, the Legislature by chapter 852 of the Laws of 1939 had attempted to meet the objections pointed out in the opinion of the Appellate Division. That statute amended section 126 of the Domestic Relations Law and made the rule that " if the mother is married, both she and her husband may testify to non-access " applicable in paternity proceedings in every court in this State. The question here presented is whether the differentiation made between such proceeding and other proceedings, though state wide, is without any reasonable basis.

Paternity proceedings are brought to enforce a statutory duty imposed upon the father of a natural child to whom the father at common law owed no duty. (*People ex rel. Lawton* v. *Snell*, 216 N. Y. 527.) Such a proceeding may be brought by the mother or if the child " is or is likely to become a public charge " by a public official. (Inferior

Crim. Ct. Act, § 64, subd. 1.) The child is not a necessary party to the proceedings nor is the husband of the mother. The order made in such a proceeding does not constitute an adjudication binding on them or persons claiming through or under them that the child is or is not the legitimate offspring of married parents. An order adjudging that some person other than the mother's husband is the father of the child and ordering him to provide for its support is, it is plain, not a binding adjudication of illegitimacy. It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties.

It is not unreasonable that in statutory proceedings to enforce a duty imposed by statute upon the father of a " natural child " the mother of the child and her husband should be permitted to give testimony which they would not be permitted to give where an adjudication of the *status* of the child is sought. It was said by Lord MANSFIELD in *Goodright* v. *Moss* (2 Cowp. 594) that " It is a rule, founded in decency, morality and policy that they shall not be permitted to say after marriage, that they have had no connection and therefore that the offspring is spurious," but the foundation of the rule is much firmer when it is invoked for the protection of the child or of the parties to the marriage or of the public, than when invoked as a shield by an alleged adulterer against liability for the consequences which follow from his wrong.

Indeed, even though the rule of evidence which denies to a husband or wife permission " to say that they have had no connection and therefore that the offspring is spurious " is, in the absence of statute, generally applied in bastardy proceedings, it has been suggested long ago by an eminent judge that even without a statute such testimony should be received in that class of proceeding. Thus, in the case of *King* v. *Luffe* (8 East, 193) Lord ELLENBOROUGH, after pointing out that in such a proceeding, of course, a wife may testify that she had intercourse with an adulterer, added: " it might also perhaps be competent for her to

prove that the adulterer alone had that sort of intercourse with her, by which a child might be produced within the limits of time which nature allows for parturition." (See, also, *State* v. *Shoemaker*, 62 Iowa, 343; *Miller* v. *Anderson*, 43 Ohio St. 473, for judicial suggestions that analogous distinctions might be made by the courts even without a statute.) Other objections raised by the appellant have been examined and rejected.

The order should be affirmed.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Order affirmed.