Ignatz Punzi, Plaintiff, *v.* Alice Punzi, Defendant.

Supreme Court, Special Term, New York County, January 30, 1948.

*Arthur C. Mandel* for plaintiff.

*Solomon Weiss*, special guardian for infant named in complaint.

Church, J. In this action, the plaintiff husband seeks a divorce from the defendant wife; the legitimacy of one of four children to which she gave birth during their marriage is one of the issues of the action incidental to the main determination.

The testimony of the plaintiff husband as to nonaccess to the defendant wife during the period of gestation of the child to the extent that it tended to show adultery by excluding him from paternity of the child and to the extent that it bore on the legitimacy of the child, " one of the issues in the action ", the action for divorce between husband and wife, and " incidental to the main determination," is, except as to the alleged confession of adultery and illegitimacy by the defendant wife, stricken from the record because of his being an incompetent witness on these issues (*Commissioner of Public Welfare* v. *Koehler*, 284 N. Y. 260; *Benti* v. *Benti*, 62 N. Y. S. 2d 239;

*Stillman* v. *Stillman,* 240 N. Y. 268, 272; *Admire* v. *Admire,* 180 Misc. 68; Civ. Prac. Act, § 349).

Section 119 of the Domestic Relations Law provides: " A child born out of wedlock is a child begotten and born: (a) Out of lawful matrimony; (b) *while the husband of its mother was separate from her a whole year previous to its birth;* or (c) during the separation of its mother from her husband pursuant to a judgment of a competent court." (Italics supplied.) " The statutory reference to a child born while the husband of its mother was ' separate ' from her for a whole year means, it is plain, while husband and wife were living apart under conditions where there is no ' fair basis for the belief that at times they may have come together.' " (*Commissioner of Public Welfare* v. *Koehler,* 284 N. Y. 260, 264–265, *supra.*)

The plaintiff testified that the defendant met him in the street (location not specified) after she had rung the bell where he lived in June or July, 1947, and appealed to him for money to go and see a doctor. He refused, saying, " If you really have to go to a doctor, I will bring you there to make sure you don't spend the money." After they came to the office of the doctor of his selection, the doctor examined the defendant and announced she was pregnant.

The testimony of the plaintiff proceeded:

" Q. When you talked to the doctor, was your wife there? A. The three of us were there.

" Q. Just please tell his Honor what you said to the doctor in the presence of your wife? A. The first thing I told her, ' Doctor, if she is pregnant, that is news to me, as I have not lived with her in four years.' I says, ' It is impossible for it to be my child.'

" Mr. Weiss: Your Honor, I move to strike out the answer.

" The Court: Strike that out.

" Mr. Mandel: I consent to that.

" Q. Please do not say that. I asked you not to bring in anything about that. I asked you to tell the story of what you said to her concerning how your wife became pregnant. What did you say? Go back to the conversation. A. Well, I did say it was news to me.

" Q. Yes, you said that. Please avoid saying anything which would indicate that you were not together in the same room. Avoid that. Go ahead now. A. ' She couldn't have got it by proxy.'

" Q. Go on. Tell us what you said. A. I am trying to remember exactly.

" Q. I subpoenaed Dr. Lalone. She ought to be here. Let me refresh your memory: Did you talk anything about Bleecker Street to her at that time? A. On the way out I told the doctor, I said, ' If she was pregnant, let her go and find the fellow that did it where she hangs out on Bleecker and 10th Street.''

(The plaintiff had previously testified to an incident of seeing her with a man on the public street at that location between October and December, 1946.)

" Q. And what did your wife say to that? A. She said, ' Well, if he denies that child, he will deny the other three. It makes no difference.' ''

This testimony is not stricken but is allowed to stand as recorded, under the authority of *Monypeny* v. *Monypeny* (171 App. Div. 134) and cases approving it.

In the first place, the alleged statement of the wife is not a confession either of adultery or illegitimacy of the fourth child. Analyze the words: " Well, if he denies that child, he will deny the other three.'' The record shows that their married life has been hectic and stormy; he says that she has had him arrested at least ten times since 1943; since they separated she has had him arrested for molesting her and each time he has been discharged and once she was sent to Bellevue Hospital for mental observation. She has had him brought-before the Domestic Relations Court, wherein a proceeding is still pending. As to 1944, on a charge of assault on his wife, his sister-in-law and his mother-in-law, he boasted on the stand as follows: " Q. And you appeared in the Court of Special Sessions? A. They didn't get no satisfaction.''

In view of utter despair and illness, and she believing that he was living in adultery with another woman, which of course he denies, it is reasonable to infer that she meant that the plaintiff had no more right to deny his fourth child than he did his other three children. He admits the paternity of those three; as a matter of fact he has always used as a justification of his access to the defendant, even during their living apart, his paternal love for his children, the everlasting bond between husband and wife.

In the second place, even if the words of the defendant can by the wildest flight of the imagination be construed to be a confession of adultery, the plaintiff produced no corroboration of the alleged adultery which is indispensable under the doctrine of *Monypeny* v. *Monypeny* (171 App. Div. 134, *supra*) and the line of cases following it.

The only witness called by the plaintiff other than himself was his daughter. She in no way corroborated any adultery by her mother or any facts showing that the child, which her mother gave to her to take care of, was born out of wedlock.

In the *Koehler* case (284 N. Y. 260, 263, *supra*) the Court of Appeals said: "The presumption of legitimacy, we have often said, is ' one of the strongest and most persuasive known to the law.' (*Matter of Findlay*, 253 N. Y. 1, 7.) At one time, as the court pointed out in that case, the presumption was conclusive ' if a husband, not physically incapable, was within the four seas of England during the period of gestation.' In such case the court would not ' listen to evidence casting doubt on his paternity.' Even now, though the ancient rule no longer is applied with the same rigor, ' if husband and wife are living together in the conjugal relation, legitimacy will be presumed though the wife has harbored an adulterer ' (p. 8). The presumption, however, may be shattered by evidence which establishes that there has been no possibility of access. Legitimacy, we have said there, ' may even be presumed though the spouses are living apart if there is a fair basis for the belief that at times they may have come together ' (p. 8). In *Matter of Findlay* (*supra*) the court thus said in effect that in accordance with well-established common-law rules a child, born to a married woman, ' living in conjugal relation with her husband,' must be presumed *conclusively* to be a child born in wedlock unless it appears that during the period of gestation the husband was physically handicapped, or that the spouses were living apart in manner which excluded any ' fair basis for belief that they may have come together.' "

There is no competent evidence that the plaintiff and defendant during the period of gestation of the child were living apart in manner which excluded any " ' fair basis for belief that they may have come together.' "

Even when living separate and apart it is undisputed that the plaintiff and defendant had access to each other but he has attempted to testify that it was not in her bedroom.

The alleged oral statement of the defendant, " It makes no difference ", and the written statement in her reply to the letter to the special guardian about the action, " Not interested ", demonstrated the utter feeling of futility on the part of the sick defendant. It is apparent that she desires a divorce from the plaintiff rather than he should obtain the divorce against her. But it does make a difference to the State whether the plaintiff has made out a case by sufficient proofs. It cannot

be done by the uncorroborated testimony of the plaintiff. In spite of the default of the defendant, the State is interested in this marriage and the legitimacy of the child. If the State should allow a divorce and declaration of illegitimacy of the child involved, it is likely that the defendant and her child will eventually become public charges, and the plaintiff will escape his financial responsibilities which the record shows he has been continually seeking to avoid.

Findings of fact and conclusions of law have been passed upon as noted in the margins thereof. The complaint is dismissed on the law and the facts. Decision and judgment signed.