THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* "ROBERT TOWNS", Defendant.*

Children's Court, Steuben County, June 22, 1951.

*Frank L. King* for complainant.

*Charles H. Githler* for defendant.

* Names used herein are fictitious for the purposes of publication.

Brisco, J. This proceeding has been duly instituted by the complainant, the mother of a child born in the city of Corning, New York, on July 28, 1949, to compel support and education of the said child, pursuant to section 122 of the Domestic Relations Law. All interested parties reside in Steuben County. The defendant has appeared and has denied the charges of the complainant and has particularly contested the question of nonaccess of the mother and her husband.

It is conceded that the complainant is married to one " Harold Eliot " and that the marriage relationship has never been terminated by judgment of divorce, separation, annulment or dissolution.

A brief summary of the facts shows that the complainant met the defendant at a dance hall on or about August 2, 1947, and shortly thereafter continued to keep company with him until about May 15, 1950, when the relationship broke off. It further appears that the parties began to have sexual relations within several weeks after they met and that this relationship continued for some several months after the child was born. There came a time when the defendant provided an apartment for the complainant at ——————— Street, in the city of Corning, which was upstairs over his father's business. The apartment consisted of three rooms, besides a room occupied by the defendant. The complainant, the complainant's mother, and the two daughters of the legal marriage resided in these apartment quarters. While they were so living therein, the complainant became pregnant on or about the last of October, 1948. The complainant testified in this respect that she told the defendant and the defendant told her that he didn't want her to get rid of the child and that they went to the State of Alabama for the purposes of her getting a divorce so that he could marry her but that she was unable to get a divorce and so she returned home with the defendant, and on July 28, 1949, the child was born and at the defendant's request she named the child " Robert ". The defendant paid the hospital bill and thereafter continued to maintain the apartment and buy clothing for the child, and this association continued until on or about May 15, 1950.

The evidence further shows that a sister-in-law had gone to a cottage on many occasions with the complainant and the defendant and that she had seen them in bed together on different occasions, although in this respect she testified that they appeared to have been clothed although they were covered and side by side in the bed at the cottage.

The complainant's mother was sworn and gave evidence that she lived in the apartment with the complainant and the defendant and that she observed expressions of love, such as the defendant putting his arms around the complainant and showing other signs of love and affection to her.

The defendant admitted that he had had intercourse during this period of time with the complainant at least fifty times. He stated, however, that on one occasion he saw the complainant's husband go upstairs while he was tending bar for his father downstairs, and it was further stated by the complainant's sister-in-law that on one other occasion she was present when the complainant's husband came while in a drunken condition to see the children. Complainant's mother testified that on the occasion defendant testified to she was home in the apartment and that the complainant was not there. Complainant denied that she has been with her husband or has had access or has had any sexual relations with him, and that on only one occasion did he see her.

The Legislature, by chapter 852 of the Laws of 1939, amended section 126 of the Domestic Relations Law and made the rule that " if the mother is married, both she and her husband may testify to non-access " in paternity proceedings in every court in this State. " A ' natural child ' or a ' child born out of wedlock' or a 'bastard ' as defined by the statutes is in effect a child born ' out of lawful matrimony ' or born to a married woman under conditions where, as stated in *Matter of Findlay* [253 N. Y. 1], the presumption of legitimacy is not conclusive and has been rebutted. The statutory reference to a child born while the husband of its mother was ' separate ' from her for a whole year means, it is plain, while husband and wife were living apart under conditions where there is no ' fair basis for the belief that at times they may have come together.' " (*Commissioner of Public Welfare* v. *Koehler,* 284 N. Y. 260, 264–265.)

The facts compel me to hold that the presumption of legitimacy in this proceeding has been rebutted and, in fact, shattered (*Matter of Findlay,* 253 N. Y. 1). The presumption has been overcome by evidence that is " strong, distinct, satisfactory and conclusive " and by disproving every reasonable possibility. " ' It is not * * * shaken by a mere balance of probability.' " (*Hynes* v. *McDermott,* 91 N. Y. 451, 458.)

In fixing the allowances in this case, I take into consideration that the defendant is divorced and is paying for two children under No. 1 marriage, is presently remarried, and that his earning capacity is about $50 a week.

An order will be made, therefore, in conformity with section 127 of the Domestic Relations Law, providing for payment by the defendant to the Welfare Commissioner of Steuben County, New York, as trustee, of the sum of $5 weekly, and every week from May 15,.1950, the date when the mother and child moved from the defendant's quarters, for and towards the support and education of the said child, until the said child reaches the age of sixteen years; and any unpaid medical and hospital bills in connection with the mother's confinement and recovery; and the defendant shall pay to the said commissioner, as trustee, in the event the said child shall die before he reaches sixteen years of age, the necessary funeral expenses, the amount thereof to be approved on motion of this court.

The defendant is further ordered and directed to pay counsel fees to Frank L. King, Esq., attorney for the complainant, in the sum of $100, which is fixed and allowed as a reasonable sum. Said attorney's fees are to be paid within sixty days after the entry of the order herein.

The defendant is hereby committed to pay the arrears in this matter at the rate of $2 per week until they are paid.

The defendant shall further file an undertaking in the sum of $1,000, with sufficient sureties, conditioned for the fulfillment of the above orders, according to the statute in such case made and provided.