In the Matter of '' VALERIE DUNN '', Petitioner, against '' LAWRENCE WINTER '', Respondent.*

Children's Court, Onondaga County, September 15, 1952.

---

* The opinion as filed sets forth the true names of all parties, but, as here published, substitutes fictitious names as customary in Children's Court matters.

*Irving Devorsetz* for petitioner.

*Paul R. Shanahan* for respondent.

YEHLE, J. The facts in this proceeding are, in brief, as follows: The complainant, " Valerie Dunn ", also referred to as the petitioner, filed a verified complaint against the defendant, " Lawrence Winter ", also mentioned as the respondent, dated April 16, 1951, alleging that she is pregnant with child and that said " Winter " is the father thereof. The parties first appeared in court on April 23, 1951, at which time both were represented by counsel. The matter was adjourned from time to time and thereafter and on June 23, 1952, the issues were tried. In the meantime and on October 14, 1951, the complainant gave birth to a full term, normal male child.

The testimony offered on the part of the complainant disclosed the following: That the complainant was married to one

"Francis Dunn" on September 22, 1934, and has lived with him continuously since that time; that during the late summer or early fall of 1950 both complainant and her husband had chest X-Rays and since her examination disclosed a suspicious condition of her lungs, she has had periodic examinations since then; that because of her condition, her husband determined they ought not to continue to have sexual relations and that they have not had any such relations since about in October, 1950; that she met the respondent in May, 1950, through a mutual friend and that she saw him frequently thereafter; that in December, 1950, she had sexual relations with respondent and again the latter part of January, 1951, and also about February 4, 1951; that she failed to menstruate in February, 1951, her last menstrual period prior to the birth of the child in question having been in January, 1951; that she had an Aschheim-Zondek test in March, 1951, and learned that she was pregnant; that she gave birth to a full term normal male child at St. John's Maternity Home on October 14, 1951; that in January, 1952, the complainant, her husband and the child in question had blood-grouping tests by Dr. Ellery Allen, an expert in this field, and that as the result of said tests the doctor excluded her husband from being the possible father of said child.

Further testimony disclosed that the complainant and her husband have occupied the same bed throughout their married life, including the period in question and up until the time of the trial. As a matter of fact, the husband testified that they have always lived together since their marriage and that they have occupied the same bed, but have had no sexual relations since October, 1950. In response to a direct question by the court he said: "Yes, there is no other room for us". Section 126 of the Domestic Relations Law provides in part: "If the mother is married, both she and her husband may testify to non-access".

At the close of the complainant's case, the respondent moved for a dismissal of the proceeding.

This type of proceeding is statutory and was not known to common law. The original enactment of law pertaining to bastards was contained in the revised statutes passed in 1827–1828 (part I, ch. XX, tit. VI, § 1). In that law the definition of a bastard was defined as follows: "Every child shall be deemed a bastard within the meaning of this Title, who shall be begotten and born. 1. Out of lawful matrimony: 2. While the husband of its mother continued absent out of this state, for

one whole year previous to such birth, separate from its mother, and leaving her during that time continuing and residing in this state: 3. During the separation of its mother from her husband, pursuant to a decree of any court of competent authority ''.

Since that time amendments have been enacted to liberalize and modernize the provisions of the statute in regard to proceedings of this nature and at one time the provisions relating to this type of proceeding were contained in the Code of Criminal Procedure (§§ 838–860). In 1925 the Legislature repealed the sections of the Code of Criminal Procedure pertaining thereto and enacted article VIII of the Domestic Relations Law. At the present time, article VIII of the Domestic Relations Law makes provision for the support and education of children born out of wedlock and proceedings to establish paternity. The provisions of this statute, some of which are still penal in nature, must be strictly construed. (*People ex rel. Lawton* v. *Snell,* 216 N. Y. 527.)

The definition of a bastard or illegitimate child or child born out of wedlock has not, however, been very materially changed since the original enactment one hundred and twenty-five years ago, for section 119 of the Domestic Relations Law as it now exists defines, among other terms, the meaning of a '' child born out of wedlock '' and states: '' 1. A child born out of wedlock is a child begotten and born: (a) Out of lawful matrimony; (b) while the husband of its mother was separate from her a whole year previous to its birth; or (c) during the separation of its mother from her husband pursuant to a judgment of a competent court.''

Clauses (a) and (c) are not applicable in this case since it is admitted that the complainant was a married woman prior to and at the time of conception, at the time of the birth of the said child and up to and including the present time. Furthermore, no evidence was offered to show that the mother and her husband were separated pursuant to a judgment of a competent court. The only possibility that this proceeding can be maintained is under clause (b). However, there is no evidence to substantiate this contention, i.e., that '' the husband of its mother was separate from her a whole year previous to its birth ''. As a matter of fact, the uncontroverted testimony of both the complainant and her husband shows otherwise.

The complainant attempts to maintain this proceeding in spite of the provisions of the definition of a child born out of wedlock by virtue of the results of certain blood tests which were made.

not pursuant to any of the provisions of article VIII, but by reason of the provisions of section 306-a of the Civil Practice Act. Section 126-a of the Domestic Relations Law added in 1935 and amended in 1936 (L. 1936, ch. 604) provides for blood-grouping tests upon motion of the defendant to determine whether or not he can be excluded as being the father of the child in question. In this proceeding the respondent did not demand such a test. However, the complainant upon her own volition procured such tests of herself, her husband and the said child. No provision, however, is made in the statute governing this type of proceeding, for such tests under the circumstances here involved. Section 306-a of the Civil Practice Act provides for such a test '' Wherever it shall be relevant to the prosecution or defense of an action ''. (See *Matter of Lentz,* 247 App. Div. 34.)

I know of no appellate court decision which has held that the findings of exclusion in blood grouping tests can overcome the provisions of a statute which must be strictly construed. (*People ex rel. Lawton* v. *Snell, supra.*) Therefore, in spite of this evidence excluding the husband, I do not feel that the complainant can maintain this action because she was not living separate and apart from her husband for a whole year previous to the birth of the said child. To hold otherwise would afford a ready opportunity for extortion on the part of unscrupulous married couples.

In the case of *Commissioner of Public Welfare* v. *Koehler* (284 N. Y. 260) the Court of Appeals on page 263, in quoting from the case of *Matter of Findlay* (253 N. Y. 1) stated : '' The presumption of legitimacy, we have often said, is ' one of the strongest and most persuasive known to the law.' (*Matter of Findlay,* 253 N. Y. 1, 7.) At one time, as the court pointed out in that case, the presumption was conclusive ' if a husband, not physically incapable, was within the four seas of England during the period of gestation.' In such case the court would not ' listen to evidence casting doubt on his paternity.' Even now, though the ancient rule no longer is applied with the same rigor, ' if husband and wife are living together in the conjugal relation, legitimacy will be presumed though the wife has harbored an adulterer ' (p. 8). * * * In *Matter of Findlay (supra)* the court thus said in effect that in accordance with well-established common-law rules a child, born to a married woman, ' living in conjugal relation with her husband,' must be presumed *conclusively* to be a child born in wedlock unless it

appears that during the period of gestation the husband was physically handicapped, or that the spouses were living apart in manner which excluded any ' fair basis for belief that they may have come together.' "

On pages 264–265 the court further stated " The statutory reference to a child born while the husband of its mother was ' separate ' from her for a whole year means, it is plain, while husband and wife were living apart under conditions where there is no ' fair basis for the belief that at times they may have come together.' " (See, also, *Matter of Lane* v. *Eno,* 277 App. Div. 324.)

An order may be entered herein dismissing the complaint.