Mabcus L. Fillet, J.
This is a paternity proceeding wherein petitioner, by petition filed in this court September 7, 1962, alleges that the respondent is the father of a child born to her out of wedlock on August 12,1962. Since there is no proof that the child was anything but a normal-term baby, it is presumed that conception took place about the middle part of November, 1961.
Because of the fact that the Domestic Relations Law of the State of New York was in existence at the time of the conception and birth of the child but was superseded by the Family Court Act of the State of New York on September 1, 1962, and the said petition was filed after September 1, 1962, the question has been raised as to which of these two laws is to be applied, each law having a different definition of a “ child born out of wedlock ’ ’. In addition, some clarification is required as to whether or not the famous Findlay presumption (253 N. Y. 1) is applicable in either case.
Section 119 (subd. 1) of the Domestic Relations Law, before it was repealed, defined a child born out of wedlock as “ a child begotten and born: (a) Out of lawful matrimony; (b) while the husband of its mother was separate from her a whole year previous to its birth; or (c) during the separation of its mother from her husband pursuant to a judgment of a competent court.” Section 512 of the Family Court Act defines a child born out of wedlock as “ a child who is begotten and born out of lawful matrimony.” Therefore, in order for the petitioner to succeed, she must prove to the court that the child in question falls within one of these definitions.
Petitioner’s verified bill of particulars alleges that she resided with her husband through September 9, 1961. Her testimony ° was that she “ broke up with her husband in early September, 1961 ’ ’. On cross-examination, she indicated some doubt as to the exact date, stating that she ‘ ‘ was inclined to believe ’ ’ that her husband left the first part of August but that “ it is possible that I may have been mistaken — I think it was the first part of August ”. Respondent’s witnesses testified that the petitioner and her husband separated between October 1 and October 22. *57 One of these witnesses, a former policewoman, testified that the petitioner’s husband moved out the last week of October or the first week of November, and, under cross-examination testified that petitioner’s husband was living with the petitioner in their apartment in September, 1961.
The testimony is uncontradicted that petitioner and her husband, for a long period after their separation, continued to see one another and, on occasion, to be alone together. Although petitioner and her husband both denied that they had any relations with each other during these periods, petitioner testified that her husband came every Friday to bring her money and every Sunday to take the children for a visit and that “ once or twice, I was alone with my husband ”. In fact, there is testimony to the effect that she was still using her husband’s car after she and her husband parted and for sometime after she began having relations with the respondent. Petitioner’s husband testified substantially to the same effect and also that sometimes the lady upstairs would be there, sometimes petitioner’s mother and that “ sometimes no one else would be there The children at that time were only two and three years old respectively. Two essential facts, therefore, found by the court, as the trier of the facts, by a fair preponderance of the evidence and to the court’s satisfaction and meeting the standards imposed by prevailing judicial opinion, are (1) that the petitioner and her husband were married at the time of the conception and at the time of the birth of the child and (2) that they were not separate and apart for more than a year prior to the birth of the child.
The testimony is replete with oral and documentary proof that the petitioner and respondent were having sexual relations several times a week during the critical period and were spending week ends in New York City and elsewhere in motels and hotels and having intercourse there and in parked automobiles for several months before, during and following the critical period. It is to be noted that the respondent did not testify in his own behalf and there is no denial on the record of petitioner’s proof to this effect. A third essential fact found by the court is that petitioner and respondent had sexual relations at the alleged time of conception of the said child.
Although both petitioner and her husband testified that they had no intercourse between them during this period and this testimony was not contradicted or denied by the respondent, “It is immaterial whether the parties to the marriage testify, as they both did here, that there was no intercourse between them during the period they were not separated. It is plainly *58 the policy of the statute for reasons obviously based on sound public policy not to treat such a child as one born out of wedlock. (Cf. Commissioner of Public Welfare v. Koehler, 284 N. Y. 260.) ” (Lovelace v. Arcieri, 17 A D 2d 465.)
Considerable confusion has resulted from the various definitions of “ child born out of wedlock ” found in judicial decisions over the years. Certainly the layman’s understanding of the term is “ a child whose father is not the mother’s husband ” and to him it is of no significance whether or not the mother of the child is married, either at the time of conception or birth. And, over the years, the definition has included £ 1 natural child ’ ’, ££ bastard ” and ££ illegitimate child ” (see Webster’s New International Dictionary). However, section 59 of the General Construction Law, effective April 9, 1925, eliminated the use of these terms and directed that only the term “ child born out of wedlock ’ ’ should thereafter be used.
A paternity proceeding is a special type of proceeding, in derogation of the common law, whose sole purpose is to impose financial responsibility on the father of a child born out of wedlock. It has no other purpose. ‘£ The child is not a necessary party to the proceedings nor is the husband of the mother. The order made in such proceeding does not constitute an adjudication binding on them or persons claiming through or under them that the child is or is not the legitimate offspring of married parents. An order adjudging that some person other than the mother’s husband is the father of the child and ordering him to provide for its support is, it is plain, not a binding adjudication of illegitimacy. It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties.” (Commissioner v. Koehler, 284 N. Y. 260, 267, supra; see, also, People v. Arcieri, 8 A D 2d 923.)
Having in mind the particular and peculiar nature of a paternity proceeding, the Legislature has applied a particular and peculiar definition to ££ a child born out of wedlock ” as above stated. The courts have consistently held that a child born out of wedlock is one born ££ out of lawful matrimony ” which means one ££ born to an unmarried mother ” (Lovelace v. Arcieri, 17 A D 2d 465, supra; Commissioner v. Koehler, supra). Since the petitioner was a married woman at the time of the conception and the birth of the child, the child does not fall within section 119 (subd. 1, par. [a]) of the Domestic Relations Law.
Nor does the child fall within the definition under section 119 (subd. 1, par. [b]) of the Domestic Relations Law, since the husband of the child’s mother was not separate from her a whole *59 year previous to the child’s birth. The word “ separate” in this section means “ while husband and wife were living apart under conditions where there is no ‘ fair basis for the belief that at times they may have come together.’ ” (Commissioner v. Koehler, 284 N. Y. 260, 265, supra; Benti v. Benti, 62 N. Y. S. 2d 239; Punzi v. Punzi, 191 Misc. 36, affd. 275 App. Div. 766; see, also, Matter of Saratoga County Comr. v. “Waters”, 205 Misc. 1004.) Under the facts as found, petitioner and her husband actually came together on many occasions; at times, when there was no one else present.
The child does not fall within section 119 (subd. 1, par. [c]) of the Domestic Relations Law, since the petitioner and her husband were not separated pursuant to a judgment of a competent court.
Does the child, then, meet the definition of a “ child born out of wedlock ” as defined in section 512 of the Family Court Act? The same rules of construction must be applied to subdivision (a) of section 512 of the Family Court Act as have been applied to section 119 (subd. 1, par. [a]) of the Domestic Relations Law, with the same result, namely, that the child is not a “ child born out of wedlock ” (“ Out of lawful matrimony ”), since the petitioner was married both at the time of conception and birth of the child. The effect, therefore, of section 512 of the Family Court Act has apparently been to make it impossible for a woman to question the paternity of a child which was either begotten by or born to her while she was married. Although this seems to have resulted, it is not the purpose of this court to question the intention of the Legislature, since it was well aware of the existing legal definition of these terms. If the Legislature had not intended this, it could have applied the layman’s definition, namely, that a child born out of wedlock is a child ‘ ‘ whose father is not the husband of its mother ’ ’. If this definition had been adopted, then the Findlay presumption (253 N. Y. 1, supra) would come into full force and play in the appropriate case. Judge Yehlb, the Family Court Judge of Onondaga County for many years, has written a most complete and informative opinion on the subject in Matter of “Dunn” v. “Winter” (203 Misc. 181, affd. sub nom. Matter of Davis v. Whalen, 281 App. Div. 1068).
It is the opinion of this court that the oft-quoted presumption of legitimacy as set forth in the Findlay case (supra) never has application to section 119 of the Domestic Relations Law except possibly under subdivision 1 (par. [b]) in a case where the husband of the child’s mother was in fact “ separate from her a whole year previous to its birth”. That presumption is only *60 evidentiary in character and not substantive. It does not define a child born out of wedlock but only raises a presumption of legitimacy, thereby shifting the proof to the one attacking the legitimacy. It has been applied with great force and effect, not only in paternity proceedings, but in other proceedings such as the various forms of matrimonial actions and actions where title to property was involved or where questions of inheritance were the subject matter.
It is, therefore, not necessary to decide whether the Family Court Act or the former Domestic Relations Law section applies, since under the law applicable to the facts established in this case, the child in question is not a “ child born out of wedlock ” under the definition of either the Domestic Relations Law or the Family Court Act.
I find that the respondent is not the father of the child and the petition is dismissed.