OPINION OF THE COURT
John E. Flemma, J.
Before the court is a petition filed by Thomas Palmer against Rosemary Carter seeking an order of filiation declaring him to be the father of Tijuan Carter, a male child born out of wedlock to respondent on February 26, 1983.
The matter came on for a fact-finding hearing with all parties present and represented by counsel. Prior to the hearing, complete genetic marker blood tests were submitted *1041 indicating a probability of paternity on behalf of petitioner of 97.69%.
Petitioner testified that he has known respondent for 12 or 13 years. They commenced dating during May of 1982 and commenced engaging in sexual relations without the benefit of birth control shortly thereafter. During late June or early July of 1982, respondent advised him that she was pregnant.
Although they saw each other periodically thereafter, they had no further conversations regarding the pregnancy until March of 1983. At that time she showed him the child and advised him that it was his son. According to the witness, she advised several other individuals that he was the father. He bought the baby diapers and periodically gave her money for support. He also visited the child periodically.
Petitioner further stated that he and respondent again commenced a sexual relationship during 1985. As a result, a daughter was born during April of 1986. He was adjudicated the father in Oneida County Family Court under docket number P-160-86. Also offered and accepted into evidence was a letter sent by respondent to petitioner wherein she acknowledged her relationship with the witness.
Patricia Palmer, petitioner’s daughter, testified that she has known respondent since 1979. During the summer of 1986, the witness had a conversation with respondent wherein respondent referred to Tijuan as the witness’ brother.
Petitioner rested and respondent testified in her own behalf. She testified that at the time Tijuan was conceived, she was married to "Pop” Carter whose name appears on the child’s birth certificate. He is now deceased. She admitted engaging in sexual relations with petitioner, but also stated that she engaged in sexual relations with her husband. According to respondent, petitioner denied that he was the father. She did admit writing the letter to petitioner.
Charley Mae Palmer, petitioner’s present wife, testified in rebuttal. She stated that during January of 1989, respondent admitted that petitioner was the father of the child.
Petitioner has the burden of proving paternity by "clear and convincing” and "entirely satisfactory” evidence (Matter of Lopez v Sanchez, 34 NY2d 662 [1974]; Matter of Piccola v Hibbard, 51 AD2d 674 [4th Dept 1976]). Although paternity must be supported by more than a mere preponderance, the evidence need not be sufficient to overcome any reasonable *1042 doubt (Matter of Hanley v Wilcox, 57 AD2d 697 [4th Dept 1977]).
Domestic Relations Law § 24 (1) states that "[a] child heretofore or hereafter born of parents who prior or subsequent to the birth of such child have entered into a civil or religious marriage, or shall have consummated a common-law marriage where such marriage is recognized as valid, in the manner authorized by the law of the place where such marriage takes place, is the legitimate child of both natural parents notwithstanding that such marriage is void or voidable or has been or shall hereafter be annulled or judicially declared void.”
It is well established that the presumption of legitimacy of the child of a married mother is one of the strongest and most persuasive known to the law (Matter of Findlay, 253 NY 1). Prior to the enactment of Family Court Act § 532 (blood genetic marker tests) it was clear that "[w]here there is no court decree of separation or divorce, access must be clearly and convincingly negated * * *. The presumption of legitimacy concerns itself with the infant and it is in the jealous protection of his rights that the courts must require clear and convincing proof of illegitimacy beyond the factual proof of adulterous intercourse.” (Matter of Gray v Rose, 32 AD2d 994, 995 [3d Dept].) Therefore, prior to Family Court Act § 532, access by the husband during the critical period was sufficient to confirm the legitimacy of the child.
In addition, it is well established that the purpose of a paternity proceeding is not to determine the status of the child. (Commissioner of Pub. Welfare v Koehler, 284 NY 260; Matter of Dorn "HH” v Lawrence "II”, 31 NY2d 154.)
Putative fathers, by the amendment of Family Court Act § 522, are permitted to commence paternity proceedings. That amendment was enacted not only to protect the welfare of a child born out of wedlock, but to indemnify the government the expense of supporting the child. (Matter of J., 50 AD2d 890; Matter of Salvatore S. v Anthony S., 58 AD2d 867; Matter of Jean C. v Andrew B., 86 AD2d 891.)
In the case at hand, it is noteworthy that the petition was not filed until after the death of respondent’s husband although petitioner had ample opportunity to do so. Furthermore, the child has been and still is in receipt of Social Security survivor benefits as a result of the death of Ed ("Pop”) Carter.
The court has before it the question of whether a 97.69% *1043 probability of paternity from a complete genetic marker blood test is sufficient to overcome the presumption of legitimacy when access to the deceased husband has been admitted. Based upon the admission of access during the critical period, the appearance of respondent’s deceased husband’s name on the birth certificate and petitioner’s unexplained delay in filing the petition, the court finds that the testimony and test results do not prove by clear and convincing evidence that petitioner is the father of the child. (Matter of David CC. v Rose GG., 142 AD2d 797.)
Therefore, it is ordered, that the petition herein be and the same is dismissed with prejudice.