Matter of Anthony S.P. v Gina L.R. (2006 NY Slip Op 51506(U))

[*1]

Matter of Anthony S.P. v Gina L.R.

2006 NY Slip Op 51506(U) [12 Misc 3d 1190(A)]

Decided on July 6, 2006

Fam Ct, Erie County

Bailey, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 6, 2006

Fam Ct, Erie County
In the Matter of Anthony S. P., Petitioner,
against
Gina L.R. and Jeffrey C.W., Respondents.
P-11485-05

Rosalie S. Bailey, J.
Anthony P. commenced this proceeding, by order to show cause, seeking a determination that he is the father of C.R., a child born to Gina R. on July 10, 2002. He alleges that he had a sexual relationship with Ms. R. from June, 1998, until April, 2005, and that a privately obtained D.N.A. test confirmed that he is the father.
Ms. R. responded to the petition with a "cross-motion" to dismiss based upon a lack of personal jurisdiction. She also argued that the petition failed to name an interested party, Jeffrey W. Mr. W. is married to Ms. R. and is listed on the child's birth certificate as the father. The W's and the child reside in the State of Michigan. Alleging that neither the W's nor the child had ever resided in New York, Ms. R. argued that New York State had no authority to continue this case. She also argued that equitable estoppel would apply, since the child had come to know only Mr. W. as her father.
Mr. P. responded with a lengthy, detailed affidavit setting forth his allegations that Ms. R. had deceived him for years about the status of her marriage to Mr. W. and her intentions towards Mr. P. Briefly, he alleges that when his relationship with Ms. R. began she told him that she was separated and that later she told him her divorce had been finalized. She offered him excuses as to why he could not meet any of her family and insisted that visits in Michigan take place at hotels. She allegedly pressured Mr. P. to marry her and encouraged his relationships both with the subject child and another child who turned out to have been fathered by Mr. W., despite Ms. R.'s repeated insistence that the child was Mr. P.'s. Visits in Buffalo were so frequent that C. was baptized in Buffalo and had pediatricians in Buffalo. She was allegedly named after Mr. P.'s mother, C. P. He attaches photographs, cards and letters purporting to show that Ms. R. defrauded him by professing her love and her desire to have a future with him and the children as a family unit. During the entire time of their relationship, Mr. P. was allegedly led to believe that Ms. R. had no further relationship with Mr. W.
The Support Magistrate conducted a hearing to determine whether or not New York courts could exercise jurisdiction over Ms. R. At the time of the hearing, Mr. W. had been served with process, but had not yet appeared in the proceeding. The parties agreed that jurisdiction was governed by section 580-201 of the Family Court Act, and the Support Magistrate made a factual finding that Mr. P. and Ms. R. had engaged in sexual intercourse in the State of New York and that the child may have been conceived by that act of intercourse. He [*2]therefore found that there is jurisdiction over Ms. R. in this State, then referred the case to me for determination of issues regarding equitable estoppel.
Mr. W. has now made a special appearance to contest jurisdiction over him. Currently pending is his motion to dismiss, arguing that he is a necessary party to this proceeding and that he cannot be compelled to litigate here because New York State lacks jurisdiction over him. Mr. W. also argues that the paternity of the child has already been settled under Michigan law and that New York courts do not have the power to interfere with that determination.
It is undisputed that New York courts do not have any basis to exercise jurisdiction over Mr. W., absent his consent. The question to be addressed, therefore, is whether or not he is a necessary party and, if he is, whether or not justice requires that the proceeding continue in his absence.
Pursuant to CPLR 1001(a), titled "parties who should be joined," "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants." Case law often refers to such persons as "necessary parties." In this case, it is undisputed that, under Michigan law, Mr. W., who is listed as the father on her birth certificate, is considered to be the father of the child because she was born during the course of his marriage to Ms. R. Unlike New York, Michigan prohibits a putative father from challenging this presumption. See, e.g., Aichele v. Hodge, 259 Mich.App. 146, 673 N.W.2d 452 (Ct. App. of Mich., 2004).
Mr. P. argues that Mr. W. is not a necessary party and, therefore, that this case can proceed without him. He cites cases, including Commisioner v. Koehler, 284 NY 260, 30 NE2d 587 (1940); and Dept. Of Social Services v. Overdorf, 115 AD2d 274, 495 NYS2d 855 (4th Dept. 1985), holding that a mother's husband is not a necessary party in a paternity proceeding brought by state authorities, since such an action involves only the duty to support the child and is not binding on either the child or the mother's husband for other purposes.
Those cases, however, do not address the situation faced here, where a putative father is seeking to establish his own paternity, presumably for the purpose of establishing his right to access with the child. In Richard "W" v. Roberta "Y", 212 AD2d 89, 629 NYS2d 512 (3rd Dept. 1995), the court faced a situation similar to the one before me. Discussing the holding of Koehler and similar cases, the Third Department noted that a paternity petition today is determinative of much more than the duty to support, and that technology has developed to the point where the question of paternity can be settled definitively. Based on these factors, the court held that where the mother's husband "has been a substantial presence in the child's life and desires to continue to exercise parental rights, the need for joining him, as a party whose interests might be inequitably affected by' the resulting order of filiation (CPLR 1001[a]), is
manifest. . ."
I must, therefore, find that Mr. W. is a necessary party to this action. Mr. W. argues that this requires the action to be dismissed, since this court has no jurisdiction over him and cannot compel him to litigate the case in New York. Under CPLR 1001(b), however, the fact that Mr. W. is a necessary party does not necessarily require dismissal. "If jurisdiction over him can be obtained only by his consent or appearance, the court, when justice requires, may allow the action to proceed without his being made a party." The Court of Appeals has stated that dismissal should, in fact, be a last resort. Saratoga County Chamber of Commerce , Inc., v. [*3]Pataki, 100 NY2d 801, 766 NYS2d 654 (2003). The statute directs the court to consider five factors in deciding whether justice requires that the action proceed.
The first factor is "whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder." It is clear that Mr. P. does not have any remedy if this matter is dismissed. The law of Michigan, as discussed above and as argued vehemently by Mr. W., provides no avenue for a putative father to challenge the presumption of legitimacy. This is in direct contrast to New York law, as shown by Richard "W", supra . The effect of dismissing Mr. P.'s action would be to deny him any chance of ever reestablishing his relationship with a daughter he alleges is not only his biologically, but also emotionally; with whom he previously enjoyed a close and loving relationship established with the full cooperation and encouragement of the mother who now seeks to deny him not only access, but also acknowledgment. For a New York court to deny a New York resident the benefit of New York law under these circumstances would be unconscionable.
The second factor to be considered is "the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined." Certainly, the prejudice to Mr. W. of a paternity ruling made in his absence would be real. He alleges that he has always treated the child as his own and claims to love her, just as Mr. P. does. The third factor, however, "whether and by whom prejudice might have been avoided or may in the future be avoided," lessens the impact of the prejudice to Mr. W. Unlike Mr. P., Mr. W. can eliminate the prejudice against him by agreeing to jurisdiction in this state. He has retained counsel in New York and is capable of defending his interests here. Further, Ms. R., over whom the court has jurisdiction, is taking the same position as Mr. W. Thus, even without his participation, his interests will be protected, in large part, by his wife. This is an important factor in lessening the prejudice against him. See, e.g., Greaney v. Poston, 50 AD2d 653, 374 NYS2d 815 (3rd Dept. 1975).
The fourth factor is "the feasibility of a protective provision by order of the court or in the judgment." Given the nature of this proceeding, it does not seem that any protective provision is possible. It should be noted, however, that this proceeding addresses only the paternity of the child. Issues of custody and visitation are not currently before this court and, based upon the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"), these issues would have to be litigated in Michigan, which is the child's home state. Thus, Mr. W. will have every opportunity to defend against any claim for custody or visitation, should Mr. P. succeed in this action.
The final factor to be considered by the court is "whether an effective judgment may be rendered in the absence of the person who is not joined." Mr. W. points to the UCCJEA and argues that no judgment issued here will be effective because future litigation will be in Michigan. He asserts that Michigan courts will not honor the decision of a New York court that contradicts Michigan's law. I do not find this argument to be convincing. Michigan and New York courts are required to give full faith and credit to each other's decisions. The effect of the decision in this case will need to be determined by a Michigan court, if there is further litigation. I cannot base my decision on speculation as to what might happen in another court in an hypothetical future.
I find, therefore, that the factors to be considered under CPLR 1001(b) indicate that justice requires that Mr. P. be allowed to proceed with this matter, despite the inability to obtain jurisdiction over Mr. W. The extreme prejudice to Mr. P. if the case is dismissed, together with [*4]the ability of Mr. W. to participate if he is concerned that his interests will be prejudiced and the Court of Appeals' admonition that dismissal is only to be used as a last resort, require that the matter proceed.
There is, however, another ground cited for the motion to dismiss. While this case was pending, Mr. W. brought a filiation proceeding in Michigan, asking for an order finding him to be the child's father. He named only Ms. R. as the defendant; it does not appear that there was any attempt to make Mr. P. a party or give him notice of the pending proceeding, although the Michigan court purportedly was aware of his claim in this state. Mr. W. argues that the order issued by the Michigan court on February 16, 2006, in the midst of the ongoing New York litigation, bars me from considering Mr. P.'s claim.
The Michigan court decision states that the Court had determined, based on testimony, that the parties are married and living together, and that the child was conceived and born during the marriage. Based on those facts, the court dismissed the proceeding, refusing to issue the order of filiation. The court explained that it had no jurisdiction to grant the order because, under Michigan statute MCL 722.711, a filiation proceeding can only be maintained regarding a child born out of wedlock. The court stated that, under Michigan law, the paternity of the child had already been established by the mere fact that the child was born during the marriage.
Res judicata can only apply to bar claims that were litigated or could have been litigated in the prior action. See, e.g., Somma v. Somma, 19 AD3d 477, 797 NYS2d 523 (2nd Dept. 2005). It cannot apply to an individual who was not a party to original action. See, e.g., Vigliotti v. North Shore University Hospital, 24 AD3d 752, 810 NYS2d 82 (2nd Dept. 2005). Thus, having had no opportunity to contest the Michigan court's decision, Mr. P. cannot be barred from bringing the current petition. I also note that the Michigan decision constituted only a finding that that court lacked jurisdiction to issue a filiation order. No factual finding was made as to who is the biological father of this child. Mr. W.'s argument that the Michigan court had "all parties necessary" before it is unavailing. The issue here is whether or not Mr. P. can have his interests finally determined by a case to which he was not a party and was given no opportunity to participate.
It should be noted that by holding that this proceeding is not barred by the Michigan order, I am not failing to give full faith and credit to the Michigan court's decision. The analysis of whether or not Mr. P.'s claim is barred would be the same, even if the prior decision had come from a New York court.
Finally, I must address Mr. W.'s argument that a decision in this case would be moot, because Michigan has jurisdiction under the UCCJEA to make custody determinations. Mr. P. does not seek a ruling regarding custody in this proceeding. It is wrong to say, however, that a finding of paternity is meaningless without an accompanying custody ruling. The very fact of having paternity determined, either in Mr. P.'s favor or not, could have a profound effect on this child's life. Various factual questions remain to be determined in this proceeding, even after this ruling, and it is uncertain whether or not a paternity test will be ordered. To call the case "moot," however, seriously misinterprets the meaning of a paternity determination.
If Mr. P. is determined to be this child's father, and if he decides to pursue further remedies in the future, new legal issues will be raised. It would not be proper for me to try to anticipate what those might be and how various courts might determine them some day down the road. Too many facts, including whether or not these parties will remain in their current [*5]residences and marital situations, are unknown at this time.
Therefore, I must deny the motion to dismiss. As a factual issue exists as to whether or not Mr. P. should be equitably estopped from asserting paternity, it appears that a hearing will be necessary. A conference is therefore scheduled for July 26, 2006, at 9:00 a.m., to discuss scheduling and the future progress of the case. The conference will be for attorneys only; it is sufficient if clients are available by telephone.
It is, therefore,
ORDERED, that the motion to dismiss by Jeffrey C. W. is denied.
This constitutes the decision and order of this Court. Submission of an order by the parties is not necessary.
Dated:July 6, 2006
Buffalo, New York____________________________________
Rosalie S. Bailey
Family Court Judge