THOMAS J. BURKE, as Overseer of the Poor of the Town of New Rochelle, Respondent, v. PETER BURPO, Appellant.

*Town officers constitute a board — delegation of official power — exercise of discretion — bastardy proceedings — order of filiation reversed.*

When there are two or more town officers of the same kind they constitute a board, and they cannot adopt any measure, nor institute any proceeding requiring the exercise of judgment or discretion, except when duly convened and acting as a board.

'There can be no delegation of official power, and whether in a given case a public prosecution shall be instituted or an application shall be made to a judge or justice of the peace, requires the exercise of judgment and discretion.

The facts and circumstances considered and commented upon which necessitate the reversal of an order of filiation and maintenance made in bastardy proceedings.

APPEAL by the defendant, Peter Burpo, from a judgment or order ·of the Court of Sessions of Westchester county, affirming an order of filiation and maintenance, made January 24, 1893, and entered in bastardy proceedings instituted before two justices of the peace of the town of New Rochelle.

*Stephen J. Stilwell*, for the appellant.

*Michael J. Tierney*, for the respondent.

PRATT, J.:

This is a bastardy proceeding brought by appeal from the judgment and order of the Court of Sessions of Westchester county, ·affirming an order of filiation and maintenance made against the ·defendant by two magistrates of the town of New Rochelle.

The child in controversy was born on the 8th of January, 1893.

Assuming the child was carried the full time, which is 280 days, as to which there is no proof to the contrary, conception must have taken place on the 3d or 4th of April, 1892. The girl, mother of the child, fixes the time of the intercourse in the first part of April, 1892 ; says it was about the second week in April, the first time it took place ; the second time, a couple of weeks later, and the third time, about five weeks after the second time. It is undoubtedly true that the intercourse which made her pregnant took place in the first week in April. She also testifies positively that it was not on a Sunday nor a rainy day ; the latter we might also reasonably assume, as she says that it took place in an open lot upon the ground.

To meet this serious charge the defendant positively swears it is not true, and produces a witness for whom he worked every day, except Sundays and rainy days, from morning until night, from the 23d of March until the 16th of April, 1892.

There could be no mistake about this testimony, as the witness produced his time book, upon which he paid the defendant his wages. The same witness also says he went for the defendant in the morning at seven o'clock and took him to his work. The girl fixes the time of day each time as between nine and ten o'clock in the forenoon.

It is clear that this testimony cannot be true. The girl tells two very different stories about the connection. In the Court of Sessions she says that it took place each time at the same place and about the same time of the day ; while in her complaint to the magistrate she says " That when she went to the woods back of her father's house for anything he would follow her and force connection with him." In the same complaint she claimed force was used, but it is apparent from her own story that no force was ever used. This may not be very material, except to throw light upon the manner in which the charge was made up and maintained.

It is plain from her story that she is a weak-minded girl, easily influenced by others, and a fit subject to be made the dupe of any designing person.

The testimony of the girl, while contradictory and unreasonable, cannot be said to be corroborated in any particular by a disinterested witness.

The father and mother testify to nothing material which is not emphatically denied by defendant, and the father is contradicted by Mrs. Archer, an entirely disinterested witness.

It is not at all reasonable that, on four different occasions, in broad daylight, the girl met and had intercourse with the defendant in open lots and lanes in plain view of several houses, and no one ever saw them together; besides, the fear of detection would have selected some other time and place for such a meeting

There seems to be some discrepancy about the age of the girl. The parents seem desirous of making her as young as possible, but the census clerk had her age rendered as twenty years.

Here is a girl, weak-minded, allowed to stroll about at will, in the habit of going berrying and walking about the fields, going to the store evenings, living in a thickly settled neighborhood, who, according to her own story, was so complaisant as to permit an old man to have connection with her for the first time in her life. Such a detail is incredible. But against this is the oath and character and blameless life of an old man, who for forty years has lived in the same community without reproach.

It is difficult to give credence to this girl's story, that the first time in her life she yielded to the defendant's embraces without any inducement whatever, or that she was so ignorant as not to know what he was doing.

The charge is one so easily made and difficult to defend against, that the courts ought to be sedulous to examine the testimony carefully before finding a defendant guilty.

We are not satisfied that the evidence in this case warrants the conviction. Order reversed.

CULLEN, J., concurred.

DYKMAN, J. :

This is a proceeding in bastardy, instituted by one of the overseers of the poor of the town of New Rochelle.

After the hearing before two justices of the peace, the defendant was declared to be the father of the bastard child, and an order of affiliation was made against him. From that order the defendant appealed to the Court of Sessions of Westchester county, where the order was affirmed by a divided court, the county judge being

in favor of reversal. Now the defendant has appealed to this court.

Before any testimony was taken upon the trial in the Court of Sessions, the defendant's attorney moved to dismiss the case on the ground that the town of New Rochelle does not support its own poor, and the proceeding is brought and prosecuted without proper authority by one overseer of the poor of said town.

Upon that motion the decision was reserved, but the motion should have been granted.

When there are two or more town officers of the same kind they constitute a board, and they can adopt no measures or institute any proceedings requiring the exercise of judgment or discretion, except when duly convened and acting as a board.

There can be no delegation of official power, and whether a public prosecution shall be instituted or an application shall be made to a judge or justice of the peace in a given case requires the exercise of judgment and discretion, which can only be exercised by the board when regularly convened and acting as such. (*The People ex rel. Board of Charities* v. *Davis*, 15 Hun, 211; *Powell* v. *Tuttle*, 3 N. Y. 401.)

Special authority must ever be pursued strictly. " The rule seems to be well established, that in the exercise of a public as well as private authority, whether it be ministerial or judicial, all the persons to whom it is committed must confer and act together, unless there be a provision that a less number may proceed." (*Downing* v. *Rugar*, 21 Wend. 178.)

Such being the rule of law, the justice who issued the warrant for the arrest of the defendant acted without jurisdiction, because no proper application was made to him to authorize him to act. (*People* v. *Davis, supra*.)

The order must, therefore, be reversed, the proceedings dismissed and the defendant discharged.

Order reversed, proceedings dismissed and defendant discharged.