In the Matter of H. GRAY*, Respondent, *v.* C. ROSE*, Appellant.

Third Department, June 5, 1968.

* Fictitious Names.

*Frank W. Getman* for appellant.

*Robert H. McDowell* for respondent.

GIBSON, P. J. The respondent in a proceeding to establish paternity of a child born to petitioner on May 9, 1966, appeals from an order of the Family Court which adjudged him to be the father. (Family Ct. Act, § 511.) Petitioner was a recipient of financial assistance from the welfare department of the county; and the proceeding is brought in her name by the County Attorney.

Petitioner testified to intimate relations with appellant on six to eight occasions between June, 1965 and August 15, 1965, when, as she says, pregnancy occurred, and on another occasion in October, 1965, when she told him that she was pregnant. Appellant testified that he had relations with petitioner in July but not thereafter and said that he was first advised of her condition when the welfare department wrote him concerning it.

According to petitioner's testimony at the trial on September 22, 1966, she had been married about five and one-half years, had one child of that marriage and had been separated from her husband for five years. She testified that she had intercourse with her husband after they "first separated", the last time "probably around four years ago." A portion of her cross-examination was as follows: "Q. Do you see your husband? A. Just a passing Hello or something. * * * Q. Were you in your husband's company at all during the summer of '65? A. No. Q. You were never with your husband at all during June, July or August 1965? A. I would see him someplace to say Hello to and we might have talked for a few minutes. Q. You met at a bar or something like that? A. Yes. Q. Was he ever at your apartment on Chestnut Street? A. Well about two years ago he came once to see [his child]. Q. Were you ever with your husband at Bill Stanley's barber shop during the summer of '65? A. I don't remember that. I don't think so."

Mr. Stanley, the barber thus referred to, testified that in August, 1965 he went to his barbershop on a Monday when it was not open for business and found petitioner and her husband, together and unclad, in a room back of the shop, where he had permitted the husband to sleep. He placed the occasion as in August, 1965, because it was then that he told the husband he would have to find another place to stay; and he testified that on another occasion that summer he had seen petitioner's car parked near the barbershop "but I didn't go in because I thought she might possibly be there." Contradicting petitioner's testimony that during the period of her relationship with

appellant she did not meet any other man, Mr. Stanley testified that he had seen her on various occasions, late at night, with male companions, whom he named; and appellant testified to the same effect, stating that her husband was with her on one of the occasions. Petitioner did not testify in rebuttal, either to contradict this testimony or to counter or otherwise comment upon the evidence with respect to her presence at the barbershop. Prior to the reception of Mr. Stanley's testimony, she had said merely, as hereinbefore noted, '' I don't remember that. I don't think so. ''

The record contains no decision whatsoever and thus fails to disclose the basis for the order of filiation appealed from; and we write at this length, not merely to emphasize the legal and practical necessity of an informative decision, but, also, to point out the factors peculiar to filiation proceedings that require especial care in the reception and evaluation of the evidence and in the preparation of detailed findings thereon. In many of the paternity cases reaching appellate courts it seems reasonably clear that no more than lip service, if that, has been accorded either the stricter standard of proof required or the presumptions applicable in certain factual settings; with the result, we fear, that often the determination represents the trial court's tacit finding of preponderant evidence merely and the application of the Judge's subjective judgment. Thus, in some cases, although not necessarily in this, a putative father nominated by the woman, sometimes long after conception and sometimes only after insistence by the welfare authorities, may be held responsible and the burden of a continuing financial obligation imposed upon him, without adequate judicial evaluation of the record, particularly of the accuser's testimony, and of any attempted impeachment of her character as respects her veracity and, in some cases, her promiscuity. This result seems to follow with some regularity if the respondent fails to testify or if he takes the stand and is candid enough to admit intimate relations at some time or another. Either course may be damning to him as affording at least a superficial basis for an affirmative finding against him.

It was well said, many years ago, that: '' The charge is one so easily made and difficult to defend against, that the courts ought to be sedulous to examine the testimony carefully before finding a defendant guilty. '' (*Burke* v. *Burpo,* 75 Hun 568, 570). These sound reasons impelled '' the requirement that the evidence of paternity must be more than preponderant and must, indeed, convince ' to the point of entire satisfaction '

(*Commissioner of Welfare* v. *Rose,* 283 App. Div. 781; *Erie County Bd. of Social Welfare* v. *Holiday,* 14 A D 2d 832) ''. (*Matter of Morris* v. *Canfield,* 19 A D 2d 942; and, see, *People* v. *Lewis,* 25 A D 2d 567; *Matter of Rebmann* v. *Muldoon,* 23 A D 2d 163).

The rule respecting burden of proof takes on added significance when, as here, the complainant is a partner to a subsisting marriage. The presumption of the legitimacy of the child of a married mother is '' one of the strongest and most persuasive known to the law '' (*Matter of Findlay,* 253 N. Y. 1, 7) and, as the *Findlay* court continued, legitimacy '' may even be presumed though the spouses are living apart if there is a fair basis for the belief that at times they may have come together '' (p. 8). By reason of one of the former definitions of a child born *out* of wedlock (i.e., while '' the husband of its mother was separate from her for a whole year previous to its birth '' [Domestic Relations Law, § 119, subd. 1, par. (b), repealed by L. 1962, ch. 690, § 5]) legitimacy of a child born *in* wedlock was then conclusively presumed (*Lovelace* v. *Arcieri,* 17 A D 2d 465); but a rebuttable presumption of legitimacy still obtains, despite the mother's separation from her husband (*Commissioner of Public Welfare* v. *Koehler,* 284 N. Y. 260, 263). In a somewhat similar factual situation we found that '' the record [did] not negate access and petitioner's testimony [did] not constitute clear and convincing proof of appellant's responsibility.'' (*Matter of Black* v. *Brown,* 27 A D 2d 683).

The burden cast upon the petitioner in a case of this nature is substantial. A respondent is also under a disadvantage in the proof, by virtue of the provision that: '' If the respondent shall offer testimony of access by others at or about the time charged in the complaint, such testimony shall not be competent or admissible in evidence except when corroborated by other facts and circumstances tending to prove such access. '' (Family Ct. Act, § 531.) This provision is, so far as here pertinent, identical with that of subdivision 1 of section 67 of the Inferior Criminal Courts Act, later subdivision 1 of section 67 of the New York City Criminal Courts Act, regulating paternity proceedings in the City of New York, and was derived therefrom following a determination that subdivision 1 was unconstitutional as deprivative of equal protection of the laws (U. S. Const., 14th Amdt., § 1) in that the requirement of corroboration was not embodied in section 126 of the Domestic Relations Law, then governing paternity proceedings in all parts of the State outside the City of New York. (*Commissioner*

*of Public Welfare [Martinez]* v. *Torres,* 263 App. Div. 19; and, as to present provisions, cf. 16 N. Y. Jur., Domestic Relations, § 523, pp. 88–89; Schatkin, Disputed Paternity Proceedings [4th ed.], p. 87.)

This mere outline of the strict and somewhat unusual evidentiary requirements in filiation proceedings underlines the clear necessity of adherence on the part of the Family Court to the legal requirement of a decision which shall embody adequate findings, such as to permit intelligent judicial review (CPLR 4213, subd. [b]; Family Ct. Act, § 165; *Rodoe* v. *Noneus,* 23 A D 2d 212, 214; *Matter of Harris* v. *Doley,* 22 A D 2d 769; *Sager* v. *Sager,* 21 A D 2d 183, 186.) For example, there is implicit here the trial court's determination, among other things, that petitioner's husband is not the father of the child involved; but we cannot review and evaluate that determination without some indication of the basis upon which it was bottomed and some presentation of the reasons for the fundamental findings. Thus, in a case such as this, it would be most helpful to know what evidence was found to meet the higher standards of proof required, and to have some indication of the basis of the acceptance or rejection of critical testimony. We do not know whether in this case the presumption of legitimacy was applied and rejected; whether the testimony of the witness Stanley was found incredible or was, perhaps, rejected without evaluation because the Trial Judge found no corroborative "facts and circumstances" or whether, indeed, it was credited, in some part at least, but appellant found responsible nevertheless. But to mention these illustrative possibilities is to point up the indispensable requirement of findings upon this and the other critical elements of the case; in keeping with "the trial court's function and its responsibility to translate its conclusions into intelligible form by a decision adequate to permit intelligent judicial review." (*Conklin* v. *State of New York,* 22 A D 2d 481, 483.) In this case, we could, of course, remit only for findings; but, under all the circumstances and in the interests of justice, we have concluded that a new trial should be had.

The order should be reversed, on the law and the facts and a new trial ordered, without costs.

HERLIHY, AULISI, STALEY, JR., and GABRIELLI, JJ., concur.

Order reversed, on the law and the facts, and a new trial ordered, without costs.