I. Leo Glasses,, J.
In a proceeding commenced by a putative father to obtain a declaration of paternity and an order of filiation, the court, on its own motion, questioned the petitioner’s standing to originate the proceeding. The respondent mother is not represented by an attorney. The court designated a Law Guardian on behalf of the child to assist the court in resolving the question of standing insofar as the resolution of that question might also affect the interests of the child. (Family Ct. Act, § 249.)
Seducing the facts to their simplest terms, the respondent mother was married to one other than the petitioner at the time she gave birth to the child. She thereafter divorced her then husband and married this petitioner, who alleges that he is the father of that child. For the reasons hereafter advanced the court concludes that this petitioner does not have standing to originate this proceeding and the petition is, therefore, dismissed. In so deciding, the court is conscious of the conflict created between this decision and the.decision in Matter of Crane v. Battle (62 Misc 2d 137).
The jurisdiction of the Family Court of the State of New York is a limited one. (N. Y. Const, art. VI, § 13.) That section provides : “ b. The family court shall have jurisdiction over the following classes of actions and proceedings which shall be originated in such family court in the manner provided by law: * * * (5) the establishment of paternity ” (emphasis added).
The “manner provided by law” for the establishment of paternity is found in article 5 of the Family Court Act. The specific provision of that article directly related to the issue at hand reads as follows: ‘ ‘ Section 522. Persons who may originate proceedings. Proceedings to establish the .paternity of the child and to compel support under this article may be commenced by the mother, whether a minor or not, by the child’s guardian or other person standing in a parental relation or being the next of kin of the child, or by an authorized representative of an *337 incorporated society doing charitable or philanthropic work, or if the mother or child is or is likely to become a public charge on a county, city or town, by a public welfare official of the county, city or town where the mother resides or the child is found.”
Clearly, the “ manner provided by law ” for the establishment of paternity does not permit the putative father to originate the proceeding.[1] (Paltani v. Creel, 169 Neb. 591.) The dismissal of the petition might well rest here were it not for Matter of Crane v. Battle (62 Misc 2d 137, supra) which cannot be ignored and which deserves comment. The bases of that decision were: I. 1 ‘ Clearly the Family Court fulfills its purpose when it declares a person to be the father of a child, whether such person be the petitioner or the respondent, thereby casting upon such person all the obligations of a father, legal and moral, to his child.” (Matter of Crane v. Battle, 62 Misc 2d 137,139.)
That observation is predicated upon the comment following section 511 of the Family Court Act by the Joint Legislative Committee on Court Reorganization.[2]
The progenitor of virtually all paternity statutes dates back to the Elizabethan Poor Law of 1576. (18 Eliz. I. c. 3.) The chief purpose of that ancient statute was not the protection of the child but the indemnification of the parish for the expense of supporting the child. (Clark, Law of Domestic Relations, 162; People ex rel. Smith v. McFarline, 50 App. Div. 95.) The entire scheme of the existing article 5 of the Family Court Act is still instinct with the same objective. Although section 511 provides that the Family Court which makes a finding of paternity may “ determine custody, as set forth in this article ” it is interesting to note that no further reference to custody is made in that article. Nor does that phrase add anything now to the law. A putative father was permitted, long before the enactment of the Family Court Act, to institute a habeas corpus proceeding for the custody of a child born out of wedlock. (People ex rel. *338 Lewisohn v. Spear, 174 Misc. 178. See also, Matter of Cornell v. Hartley, 54 Misc 2d 732.) The last sentence of section 511, viz.: ‘£ On its own motion, the court may at any time in the proceedings also direct the filing of a neglect petition- in accord with the provisions of article three of this act,”[3] does not furnish protection to the child which was otherwise absent. Section 1032 of the Family Court Act provides that a neglect proceeding may be originated by ££ (d) any person having knowledge or information of a nature which convinces him that a child is abused or neglected ” or “ (e) a person on the court’s direction.’’ The protection and care of “an innocent child of an illicit relation ” could be effectively furthered by a concerned putative father much more directly by the institution by him of a habeas corpus proceeding or a neglect proceeding. As to the “ moral obligation” of a father to his child, suffice it to say that article 5 of the Family Court Act makes no provision for casting moral obligations upon a parent assuming it were possible to legislate morality or moral obligations, judicially or otherwise.
II. ‘ ‘ Moreover it would be unconstitutional, to deprive a petitioner of access to the laws and his only remedy, solely because he is a male.” (Matter of Crane v. Battle, 62 Misc 2d 137, 139.)
The petitioner is not deprived of access to the laws and his remedy under article 5 of the Family Court Act is not his only remedy. That the petitioner is not restricted to the Family Court, notwithstanding the language of section 511 of the Family Court Act is now plain (Kagen v. Kagen, 21 N Y 2d 532; Matter of Seitz v. Drogheo, 21 N Y 2d 181). In addition, an action for a declaratory judgment has been regarded as appropriate to determine the status of a child, including legitimacy, parentage and the like. (Matter of Melis v. Department of Health, 260 App. Div. 772; CPLR 3001.) The action for a declaratory judgment in a case such as this would be the more desirable remedy since in that action, the child as well as the first husband of the respondent should be made parties. (CPLR 1001, subd. [a]; Matter of Metis v. Department of Health, supra. See, also, Domestic Relations Law, § 24.) In a paternity proceeding, neither the child nor the husband of the mother is a necessary party. ‘ ‘ The order made in such a proceeding does not constitute an adjudication binding on them or persons claiming through or under them that the child is or is not the legitimate offspring of married parents. An order adjudging that some person other than the mother’s husband is the father of the *339 child and ordering him to provide for its support is, it is plain, not a binding adjudication of illegitimacy. It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties.” (Commissioner of Public Welfare of City of N. Y. v. Koehler, 284 N. Y. 260, 267.) The implications of the Koehler case as regards EPTL 4r-1.2 are interesting to contemplate. If, for example, this putative father were permitted to originate this proceeding and an order of filiation were made which was not binding on the child or the first husband of the mother, could the child thereafter claim the right of inheritance from both and conversely, could the petitioner and the first husband of the respondent both claim the right to inherit from the child?
A State may establish such courts as it sees fit and prescribe their respective jurisdictions and the equal protection of the laws-is not violated by such diversity in jurisdiction. (Missouri v. Lewis, 101 U. S. 22.) Although the equal protection clause requires laws of like application to all similarly situated, the Legislature is allowed wide discretion in the selection of classes. (Barrett v. Indiana, 229 U. S. 26.) Classification will not render a police statute unconstitutional, so long as it has a reasonable basis. (Watson v. Maryland, 218 U. S. 173.) “ In every case, the basic question is not merely whether the attacked law discriminates, not whether it is unequal, not whether it will operate harshly or unjustly against some litigants, but whether the classification is based upon a difference which has a reasonable relation to the object sought to be accomplished.” (Shielcrawt v. Moffett, 49 N. Y. S. 2d 64, 76, affd. 268 App. Div. 352, revd. on other grounds 294 N. Y. 180, mot. for rearg. den. 294 N. Y. 840.) If the objectives sought to be accomplished by our paternity statutes are the indemnification of the public fisc and the support of the child, as appears to be the case, then I would be loathe to decide that the legislative classification as expressed in article 5 of the Family Court Act is clearly unreasonable and has no rational basis, but would rest instead upon the presumption of constitutionality. (See McKinney’s Cons. Laws of N". Y., Book 1, Statutes, § 150.)
LEI. “Although section 523 of the Family Court'Act states that1 Proceedings are commenced by the filing of a verified petition, alleging that the person named as respondent is the father of the child * * * ’ such provision should be liberally construed to carry out the intent of article V.” (Matter of Crane v. Battle, 62 Misc 2d 137,140.)
There is a substantial-difference between liberally construing a statute and rewriting it. The process of construction pre *340 supposes that we are dealing with a contest between probabilities of meaning. Sections '522 and 523 of the Family Court Act, in unambiguous and precise language, do not authorize a putative father to originate a paternity proceeding. Even if there was a basis for construction, it makes a great deal of difference whether you start with an answer or with a problem. (Frankfurter, Some Reflections on the Reading of Statutes, 8.) For example, would sections 522 and 523 of the Family Court Act permit an illegitimate child to originate a paternity proceeding? (See Allen v. Hunnicutt, 230 N. C. 49.) If a statute provides (L. 1970, ch. 127) that an abortion may be performed with the consent of the mother, would it be a “ liberal construction ” of the statute to require the consent of the putative father as well? If a statute (Domestic Relations Law, § 111, subd. 3) requires only the consent of the mother to the adoption of an out-of-wedlock child would it be a “liberal construction ” of the statute to require the consent of the putative father as well or permit him to object to a proposed adoption?
As justification for the liberal construction of the paternity statutes, the court in Crane quotes from Schaschlo v. Taishoff (2 N Y 2d 408, 411): “ The new law, although providing for indemnification of the community, is chiefly concerned with the welfare of the child (see N. Y. Legis. Doc., 1925, No. 106, pp. 13-18). Consonant with this general purport, the statute under review should be liberally construed. ’ ’ A reading of the legislative document to which reference is made reveals that the concern expressed for the welfare of the child was limited to the following: The elimination of the terms “ bastard ” and ‘ ‘ illegitimate child ’ ’ from the statutes and the substitution therefor of the phrase “child born out of wedlock” (Fourth Annual Rep. of Comm, to Examine Law Relating to Child Welfare, N. Y. Legis. Doc., 1925, No. 106, p. 15); permitting the unwed mother to bring a paternity suit directly instead of through the poor-law official so that a woman not destitute enough to be eligible for poor relief was no longer without means of establishing the paternity of the child or securing support through court action; making paternity proceedings civil rather than criminal in nature; giving the petitioner the right to appeal which only the respondent had previously, and requiring court approval of compromises or settlements. The only issue decided by the Taishoff case was that the father of an illegitimate child may be required to furnish support in accordance not only with the mother’s station in life but in accordance with his financial ability as well. Only in that respect was the court concerned with the welfare of the child.
*341 The benefits to be derived by a child from an order of filiation are measurable only in terms of money. The father may be obliged to support the child and, assuming the father died intestate, the child would be a distributee. (EPTL 4 — 1.2. See, also, Note, The Rights of Illegitimates Under Federal Statutes, 76 Harv. L. Rev. 337 [1962]; Comment, Ulegitimates: Definition of “Children” Under Federal Welfare Legislation, 67 Col. L. Rev. 984 [1967]; Note, Recovery Rights of Illegitimates Under Federal Welfare and Insurance Statutes, 7 J. Fam. L. 512 [1967].) In my view, there is no necessary correlation between the possibility of economic gain and the welfare of a child. To equate the two would he to place a dollar value on the parent-child relationship to the exclusion of the moral, spiritual, emotional, psychological and other mysterious and intangible factors which go into the nurturing of that relationship. To suppose that the best interests of a child are advanced by some magic inherent in an order of filiation flies in the face of reality. A more logical procedure for protecting the interests of the child would be to require that the child, by his representative, be a party to an action involving his paternity regardless of other parties (such as the mother) who may assert their own interests in the same action.[4]
IV. “ Section 522 of the Family Court Act * * * reads in part as follows: ‘ Proceedings to establish the paternity of the child and to compel support under this article may be commenced by * * * [a] person standing in a parental relation. ’
“ Clearly * * * petitioner * * * is standing in a parental relation to the child. As a matter of fact, he claims that he is the father of the child and seeks a declaration by this court to that effect, and accordingly he is a proper party petitioner.” (Matter of Crane v. Battle, 62 Misc 2d 137, 140-141.)
The conclusion reached would be permissible if the statute read‘1 person alleging to stand in a parental relation. ’ ’ Whether or not the petitioner stands in that relation is the very fact he seeks to establish by this proceeding.
*342 A cursory survey of the statutes of other jurisdictions reveals that only in Michigan may a putative father originate a paternity proceeding. (Mich. Comp. Laws Ann., § 722,714, subd. [f].)[5]
If a putative father in New York is to have that right, it should be conferred upon him by the Legislature.
The petition is dismissed.

. The limitation imposed hy section 522 of the Family Court Act is further reflected in sections 523, 531, 532, 541 of the Family Court Act.

. “ § 511 Jurisdiction. The Family Court has exclusive original jurisdiction in proceedings to establish paternity and, in any such proceedings in which it makes a finding of paternity, to order support and determine custody, as set forth in this article. On its own motion, the court may at any time in the proceedings also direct the filing of a neglect petition in accord with the provisions of article three of this act.”
The Committee Comment is as follows: “ 2. This jurisdictional grant is designed to permit the Family Court to draw upon all its resources in protecting and caring for the innocent child of an illicit relation. The new section also permits the filing of a neglect petition at any time in the proceedings. This combination of powers should result in practical improvements and not simply in a change in nomenclature.”

. Neglect proceedings are now regulated by article 10 (L. 1970, eh. 962).

. See, e.g., Minn. Stat. Ann., § 257.33: “ It shall he the duty of the commissioner of public welfare when notified of a woman who is delivered of an illegitimate child, or pregnant with child likely to be illegitimate when born, to take care that the interests of the child are safeguarded, that appropriate steps are taken to establish his paternity, and that there is secured for him the nearest possible approximation to the care, support and education that he would be entitled to if born of a lawful marriage.”

. In Krause, Bringing the Bastard into the Great Society — A Proposed Uniform Act on Legitimacy, 44 Tex. L. Rev. 829, 833 (1966) the following statute is advanced: “ Section 4. Voluntary Legitimation, (a) The father of a child by a woman not married at the time of the father’s application or at the time of birth of such child, may apply for legitimation of the child to the * ** * court * * * acknowledging that the child is his, and upon consent of the mother or of the person or agency having lawful custody of the child, or of á court having jurisdiction over the child’s custody, the * * * court, if satisfied that the establishment of such relationship is in the child’s best interest, shall enter an order declaring the child the legitimate child of the applicant.”