Stanley Gartenstein, J.
The proceeding before the court is purportedly framed under article 5 of the Family Court Act. It is brought by the putative father of the infant in question against the natural mother and seeks an order of filiation declaring petitioner to be the father. The natural mother admits his paternity but objects to the entry of an order of filiation.
The court is thus again confronted with the issue of a putative father’s right to bring a filiation proceeding under article 5 which refers only to proceedings brought by a mother against putative father and not vice versa. (See Matter of Juan R v Necta V, 84 Misc 2d 580, summarizing Crane v Battle, 62 Misc 2d 137, pro; and Matter of Roe v Roe, 65 Misc 2d 335, contra; and Stanley v Illinois, 405 US 645; Rothstein v Lutheran Social Services of Wisconsin and Upper Michigan, 405 US 1051; Vanderlaan v Vanderlaan, 405 US 1051, dealing with rights of out-of-wedlock fathers, all decided subsequent to Matter of Roe v Roe, supra, and Crane v Battle, supra). In Matter of Juan R. (supra), the court concluded that while the three cited United States Supreme Court cases appeared to create a constitutional defect in article 5 based upon its apparently invalid sexual classification, the constitutional issue could and must be side-stepped if possible where other grounds existed to grant appropriate relief. As a court of original jurisdiction it thus exercised that traditional judicial restraint appertaining to constitutional issues mandated in National Psychological Assn. for Psychoanalysis v University of State of N.Y. (18 Misc 2d 722, affd 10 AD2d 688, affd 8 NY2d 197, app dsmd 365 US 298).
Within a matter of weeks following Juan R, the Appellate Division in this department decided Matter of J. (50 AD2d 890), which reversed an order of this court denying a putative father an adjudication of paternity via a formal order of filiation. Inasmuch as the matter at bar is apparently the first to arise subsequent to Matter of J., and involves the clear issue of a father’s right to file a filiation proceeding under article 5, detailed examination thereof appears appropriate in order to determine its effect if any on this specific issue. A careful reading of Matter of J. yields the fact that while the majority opinion refers to article 5 and the dissent to the effect of the majority opinion thereon, that matter was decided not under article 5, but under article 6 in a proceeding for custody. Accordingly, Matter of J. appears to be expositive of *415 existing law rather than a groundbreaker for new principles since the law always required an auxiliary determination of paternity as a condition precedent to relief in favor of a putative father in a custody suit. (Matter of Anonymous, 26 NY2d 740; People ex rel. "Francois” v "Ivanova”, 14 AD2d 317; People ex rel. Lewisohn v Spear, 174 Misc 178; Matter of Loretta "Z” v Clinton "A”, 36 AD2d 995.) The decision of the Appellate Division in Matter of J., therefore, simply appears to give effect to the mechanics of achieving what was always the law concerning a putative father’s rights in a custody proceeding. Although reference to article 5 is made therein with specificity, the language containing this referral must be viewed therefore, as obiter dicta.
In point of fact, had the Appellate Division intended to judicially amend the statutory scheme of article 5 based upon its reasoning that its underlying legislative intent "recognizes the protection of the welfare of out-of-wedlock children as the primary purpose of filiation proceedings” (supra, p 891) thereby impliedly holding article 5 to be a statute determinative of status, it would seem reasonable that it would have referred to the leading Court of Appeals pronouncement concerning the court’s inability to affect status thereunder. In Commissioner of Public Welfare v Koehler (284 NY 260, 267) the court considered the caveat that an order under article 5 might label a child illegitimate where the mother is married to someone other than the putative father and stated: "The order made in such a proceeding does not constitute an adjudication * * * that, the child is or is not the legitimate offspring of married parents * * * It does not establish the status of the child nor would it be competent evidence * * * in any proceeding”.
Had the Appellate Division intended to hold an order in filiation proceedings determinative of status as would seem at first blush from Matter of J., it would seem reasonable that at least some reference would have been made therein to Koehler and distinguished from it in some way.
We therefore conclude, in accordance with the Appellate Division’s specific reference to the peculiar facts to Matter of J., that it must be limited to its facts and not be afforded universal application.
The proceeding herein is dismissed. It would seem appropriate that appellate proceedings follow either to raise the question of constitutionality, appropriate to an appellate court; or *416 to clarify the application of Matter of J. to proceedings specifically brought under article 5.