*657 OPINION OF THE COURT
Lucille Polk Buell, J.
Petitioner, by petition dated October 16, 1978, alleges that he is the father of Mary Lock, born out of wedlock to respondent on August 4, 1972 and seeks an order of filiation. Petitioner is named as the child’s father on a corrected birth certificate and the child bears his surname. Respondent entered a denial to the petition, but did not testify at the hearing.
Petitioner testified that in 1970 or 1971, he met respondent at the hospital where he was employed part time as a male nurse and where respondent was employed as an aide. Both parties were unmarried. They began dating two or three times a week and commenced having sexual relations in November or December, 1971. Petitioner further testified that, to the best of his knowledge, from approximately October, 1971, to February, 1972, respondent was not dating or having sexual intercourse with any other person. Their sexual relationship continued until August, 1972.
Petitioner testified that he saw respondent approximately one month prior to the birth of the child. Thereafter respondent concealed her whereabouts and he did not see respondent or the child for the next four or five months. He did not know respondent’s whereabouts when the child was born, the name of the hospital where the child was born nor the name of the doctor who delivered the child. Respondent eventually contacted him and told him that the child had been born and that he was the father.
Petitioner testified that the parties met sometime later and that he had limited visitation with the child, paid some support to respondent for the child and occasionally purchased Christmas and birthday presents for the child. He gave respondent $300 to $400 in cash when she first became pregnant and he produced three checks dated December 18, 1978, January 18, 1979, and February 18, 1979, made out to respondent with a notation "For Mary” on each check. The checks were indorsed by respondent. The court notes that all checks are dated subsequent to the date of the filing of the instant petition.
Petitioner testified that he took the child to an orthopedic surgeon for an examination on October 21, 1974. He produced a report dated October 21, 1974, by one George Froehlich, *658 M. D., indicating an examination of "Lock, Mary, Fa: Mr. Louis” and a bill from Dr. Froehlich for the examination sent to "Mr. Louis Lock re: Mary” and marked "Paid 1-20-75”.
Petitioner produced a corrected birth certificate for "Mary Lock” approved for filing January 30, 1975, containing the name "Louis W. Lock” as the father. Petitioner testified that, the parties had agreed to have a corrected birth certificate issued to change the child’s surname to "Lock”.
Upon cross-examination, petitioner testified that the parties generally dated after their work shift at the hospital and that they occasionally saw each other on weekends. Petitioner admitted that he did not know how respondent spent her time on the two or three days a week when he did not see her.
Petitioner testified on cross-examination that he had never sent respondent child support on a regular basis but had given her cash at various times when he had it and that he had occasionally purchased clothes and gifts for the child. He said that the $300 to $400 cash which he gave respondent early in her pregnancy was for an abortion. He did not contribute towards respondent’s hospital or medical bills or any other bills during the first few months of the child’s life because he did not know where to find respondent.
Following his testimony, petitioner called respondent as a witness. The court stated no negative inference would be drawn from respondent’s refusal to testify on petitioner’s direct case. Respondent refused to testify.
Respondent did not testify on her own behalf.
The child’s godmother, a friend of respondent’s since 1969, testified on respondent’s behalf. The witness testified she had worked at the same hospital as the parties and at one time lived in the same hospital quarters as respondent. She moved to a private residence sometime after respondent’s child was born. For a period of approximately five years she cared for respondent’s child at her home from 7:00 a.m. until 4:00 p.m. while respondent worked at the hospital.
She further testified that prior to the child’s birth she had never seen petitioner visit respondent at respondent’s residence and that petitioner had never visited the child while the child was in the witness’ care.
She testified upon cross-examination that she first saw petitioner at the hospital in 1969 or 1970 but had never met him socially. She knew petitioner worked the evening shift *659 and was unable to state whether or not petitioner had been working during the hours that the child was in her care.
Article 5 of the Family Court Act was amended, effective January 1, 1977, to permit "a person alleging to be the father, whether a minor or not” to originate a paternity proceeding. (Family Ct Act, § 522; L 1976, ch 665, § 6.) In related sections of article 5 the possibility of a male petitioner was provided for simply by substituting the words "alleged father” or "male party” for "respondent”. (Family Ct Act, §§ 531, 532, 541, 542.)
When the petitioner is the alleged father, issues arise as to the propriety of applying the same burden of proof as that applied when the petitioner is the mother and as to whether a negative inference arises when a respondent mother elects not to testify.
When the petitioner is the child’s mother, proof of paternity must be established by clear and convincing evidence entirely satisfactory to the court. (Matter of Lopez v Sanchez, 34 NY2d 662; Matter of Renee K. v Robert P., 50 AD2d 604; Matter of Patricia B. v Rossario R., 46 AD2d 922.) This standard of proof has been applied because the charge of paternity is easily made, often difficult for the male respondent to disprove, and may result in a substantial financial burden being placed upon the respondent.
Due to the inescapable fact that there is critical information concerning the child’s conception and birth which is exclusively within the knowledge of the mother, it has been stated that a male petitioner’s burden of proof should be reduced to a preponderance of the evidence. (Matter of Smith v Lane, 101 Misc 2d 615.)
In Jaynes v Tulla (70 AD2d 680), the court held that because of the difference in the financial consequences of a paternity proceeding brought by the alleged father, he should only be required to establish his paternity by a preponderance of the evidence.
The legal status of putative fathers is in a period of rapid transition. Distinctions between the rights and status of unmarried mothers and fathers are steadily diminishing. (See Stanley v Illinois, 405 US 645; Caban v Mohammed, 441 US 380.) To survive scrutiny under the equal protection clause, any gender-based distinction in treatment between unmarried mothers and fathers must bear a "substantial relation to some important state interest.” (Caban, supra, p 388.)
*660 Historically, the State interest in any paternity proceeding was the indemnification of the State for the expense of supporting the child. (See Matter of John J. S. v Theresa L., 99 Misc 2d 578; Matter of Roe v Roe, 65 Misc 2d 335, and cases cited therein.)
The State also has an interest in the orderly devolution of property. An order of filiation protects both the inheritance rights of the out-of-wedlock child and his issue and the rights of those persons inheriting from a child born out of wedlock. (EPTL 4-1.2.)
In light of this steady decline in permissible gender-based distinctions in proceedings involving out-of-wedlock children, the parties must be treated equally whenever possible.
Further, it must be remembered that while an order of filiation may affect the economic and other pragmatic aspects of the relationship between the adult parties, the primary purpose of filiation proceedings is the "protection of the welfare of out-of-wedlock children”. (Matter of J. Children, 50 AD2d 890, 891.) All parties’ interests must be considered but the court’s primary concern is the welfare of the child. (Matter of Julie J. v Edwin A., 86 Misc 2d 882.) To protect the child, paternity should be established with the greatest care.
The fact that the alleged father may willingly assume a financial burden is not in this court’s opinion, sufficient reason to risk burdening a child with one who is not in fact his natural father.
The court recognizes the substantial differences that exist between a proceeding brought by the alleged father and one brought by the mother and that certain essential facts such as proof of nonaccess and the date of conception are peculiarly within the personal knowledge of the female party. As to those facts, the general rule in civil cases that a party has the burden of proof with regard to any facts peculiarly within the party’s personal knowledge is helpful. (Richardson, Evidence [10th ed], § 99.) The male petitioner in a paternity proceeding can only testify that to the best of his knowledge the mother did not engage in sexual intercourse with any other male during the period when conception must necessarily have occurred and the basis for this belief. For example, he can testify as to the quality of the parties’ relationship during the period in question and the amount of time they spent in each other’s company. Similarly, the male petitioner can establish through testimony, hospital and birth records, the date of the *661 child’s birth and whether the birth was premature. In this way the period of conception could be ascertained by the court.
The alleged father’s testimony as to those issues peculiarly within the mother’s knowledge gives rise to a rebuttable presumption as to the truth of those facts. This rebuttable presumption serves the interests of fairness and equal protection of the parties’ rights and the child’s rights by seeking to elicit evidence from the party who has the superior means of access to the facts.[1] (See, generally, Proposed Code of Evidence for State of New York [West Pub, 1980], § 302.)
This court, therefore, concludes that the petitioner in a paternity proceeding, whether male or female, can and must meet the same standard of proof previously established for the protection of the parties and the child.
The respondent in a paternity proceeding may not be compelled to testify. (Family Ct Act, § 531.) The court notes that the phrase "the respondent shall not be compelled to testify” contained in section 531 was not amended in 1976, leading to the conclusion that both male and female respondents may utilize this privilege. In a paternity proceeding brought by a mother in which the order of filiation was affirmed, the Appellate Division, Second Department, has held that "No inference should have been drawn from appellant’s failure to testify”. (Matter of Renee K. v Robert P., 50 AD2d 604, supra; contra Matter of Jay v Andrew "Y” 48 AD2d 716;[2] Matter of Arlene W. v Robert D., 36 AD2d 455.)
In a proceeding brought by an alleged father, the court in Matter of Smith v Lane (101 Misc 2d 615, supra) concluded that a negative inference may be drawn from a respondent’s failure to testify.
Recognizing that a rebuttable presumption arises as to the truth of those facts peculiarly within a female respondent’s personal knowledge which are established to the court’s satisfaction by a male petitioner, this court concludes that the *662 holding in Matter of Renee K. v Robert P. (supra), that no negative inference should be drawn from a respondent’s failure to testify is applicable to both male and female respondents. This result is in accord with the previous discussion of the need to eliminate gender-based distinctions as to the rights and status of unwed parents.
Consideration has been given to the corrected birth certificate offered in evidence by petitioner. The rule is well established that a birth or death certificate is admissible as presumptive evidence of the birth or death but not as proof of the additional facts recited on the certificate. (Beglin v Metropolitan Life Ins. Co., 173 NY 374; lewis v Lewis, 85 Misc 2d 610; Matter of Meyer, 206 Misc 368; Richardson, Evidence [10th ed], § 345.) However, this court takes judicial notice of sections 4135 and 4138 (subd 1, par [e]) of the New York Public Health Law.
Section 4135 of the Public Health Law states that both the mother and father must consent in writing before the name of the putative father of a child born out of wedlock may be entered on the child’s birth certificate.
Under certain circumstances, a new birth certificate may be prepared for a child born out of wedlock when the original birth certificate does not indicate the father’s name. A new birth certificate can be obtained only upon the "duly verified consent of the putative father and mother in writing, to the entry of the name of such father, which consent may also be to a conforming change in the surname of the child”. (Public Health Law, § 4138, subd 1, par [e].)
The corrected birth certificate stating the child’s name as "Mary Lock” and the father’s full name as "Louis W. Lock” could only have been prepared with the consent of respondent, who, together with petitioner, sought to have petitioner named as the child’s father and to have the child known by petitioner’s surname.
The corrected birth certificate lends credibility to petitioner’s testimony that respondent told him that he was the child’s father and that the parties mutually agreed to change the child’s name.
After carefully considering the evidence presented and after carefully assessing the credibility of the witnesses, their demeanor and the manner in which they testified, and drawing no negative inference from respondent’s refusal and failure to testify, the court finds that petitioner has established by clear *663 and convincing evidence entirely satisfactory to the court that he is the father of Mary Lock, and it is ordered, that the petition be and hereby is sustained.

. Generally there are no facts which must be proved in a paternity action which are peculiarly within the father’s knowledge. However, the same rebuttable presumption arises in favor of a female petitioner if, under the circumstances of the case, such facts exist.

. The Appellate Division, Third Department, held in this case that a negative inference may be drawn from a respondent’s failure to testify. This necessarily affects the import of its holding in Jaynes v Tulla (70 AD2d 680, supra) that a male petitioner must establish his paternity by a preponderance of the evidence.