OPINION OF THE COURT
Edward J. McLaughlin, J.
No final, appealable order of disposition pursuant to article 5 of the Family Court Act may be entered absent the entry of an order of support. (Nancy V. v Raymond E. C., 75 AD2d 599; Matter of Joan S. v Ronald B., 71 AD2d 606; Matter of Susan W. v Amhad Q., 65 AD2d 594.) When a child born out of wedlock is adequately supported by its mother and there is no likelihood that the child may become a public charge, no relief is available to a putative father in a paternity action in Family Court, since a paternity proceeding is brought to insure the support of a child born out of wedlock (Commissioner of Public Welfare of City of N.Y. v Koehler, 284 NY 260; Matter of J., 50 AD2d 890), and no status giving rise to the rights of fatherhood is conferred by an article 5 proceeding. (Matter of Melis v Department of Health of City of N.Y., 260 App Div 772; contra Matter of John J.S. v Teresa L., 99 Misc 2d 578.) The status of a child may be determined by bringing an action for a declaratory judgment in Supreme Court *435 where all persons interested or likely to be affected by the determination may be joined or impleaded as parties. (Matter of Salvatore S. v Anthony S., 58 AD2d 867; Moy Mee Soo v Leong Yook Yick, 21 AD2d 45; Morecraft v Taylor, 225 App Div 562.)
FACTS
On May 2,1979 the petitioner originated a proceeding in this court pursuant to article 5 of the Family Court Act, under the authority of section 522 of that act which authorizes the father of a child born out of wedlock to commence such action. The petition sought the entry of a declaration of paternity of a child born out of wedlock to the respondent on February 3,1979. Further, the petition sought an order of support and such further relief as might be appropriate under the circumstances. At the same time the petitioner commenced a proceeding pursuant to subdivision (b) of section 651 of the Family Court Act seeking the award of the custody of the same child.
The court conducted a bifurcated hearing. It proceeded initially with the issue of paternity. After a hearing on September 5 and 6, 1979, the court found the petitioner to be the father of the child and adjourned the proceedings until October 3, 1979 for hearing on the remaining issues of visitation, custody and support.
After a hearing on October 3, 1979, the court made a decision with regard to the issue of visitation pursuant to subdivision (a) of section 549 of the Family Court Act and awarded specified visitation to the petitioner. In the same decision the court dismissed the petition seeking the award of the custody of the child to the petitioner on the grounds that the petitioner had failed to prove it was in the best interests of the child that custody be awarded to him. The court made no determination of the issue of support for the reason that no evidence was presented by either party directed to the issue.
As a result of the court’s decision on October 3, 1979 it signed an order of filiation and visitation on November 2, 1979, which order was filed and entered with the clerk of this court on November 7, 1979. The order did not refer to the issue of support.
*436 The oversight with regard to the lack of a determination on the support issue was not discovered by the court until a petition was filed on June 23, 1980 by the original petitioner seeking a modification of the previous order of visitation. The court, on its own motion, on October 15, 1980 had counsel appear and advised them of the lack of a final order and at that time set a trial date to determine the issue of support.
FINDING ON ISSUE OF SUPPORT
A hearing was conducted on December 23,1980 and it is found that the child is presently neither in need of support from the petitioner nor is the child likely to become a public charge. Those findings are based upon the fact that the original respondent is currently employed by the Federal Government in a very secure position. She is a grade GS-7 and earns between $13,000 and $14,000 per year. It is further found that the respondent is presently married and her husband earns a combined income of approximately $12,000 per year as a school teacher in a private school and as a pastor of a church. (See section 415 of the Family Court Act for the liability of a stepfather to support a stepchild who is the beneficiary of public assistance or likely to become such beneficiary.)
The court further finds that the petitioner and his present family, which consist of a wife and infant daughter, are presently receiving public assistance.
The court, now having found that the child is not now nor is it likely to become a public charge, dismisses the petition seeking the entry of a declaration of paternity, abrogates its order of filiation and vacates the order of visitation based upon the law controlling such findings.
Having made this determination, it is unnecessary for the court to decide the pending motion and petition of the original respondent and accordingly all pending motions are denied and pending petitions dismissed.
LAW
I. SUPPORT OF THE CHILD BORN OUT OF WEDLOCK
An action to compel support for the child born out of wedlock is purely a statutory proceeding unknown at com *437 mon law. (People ex rel. Lawton v Snell, 216 NY 527.) At one time neither the mother nor the father of the child born out of wedlock was liable for the child’s support and such a child was cast upon the charity of the community. (1 Schatkin, Disputed Paternity Proceedings [4th ed], § 1.08.) In 1576 the English Poor Laws were enacted (Stat 18, Eliz, ch 3) to shift the burden of support from the public to the parents of the child. Indemnification for the public was the principal purpose of this and subsequent similar statutes. (1 Schatkin, Disputed Paternity Proceedings [4th ed], § I. 09.)
In New York both parents of a child born out of wedlock are statutorily liable “for the necessary support and education of the child”. (Family Ct Act, § 513.) The mother of the child born out of wedlock, then, has long had an obligation to support her child. It was to “resolve problems of support” that the mother of a child born out of wedlock and certain authorized agencies, such as the Department of Social Services, were given the statutory right to seek to have an order of filiation and support made for the child born out of wedlock who was in need of support and likely to become a public charge. (Report of Joint Legislative Committee on Court Reorganization, No. 2, Family Court Act; Family Ct Act, § 517; Matter of Alvin B. v Denise C., 85 Misc 2d 413 [petition by putative father dismissed]; Matter of Roe v Roe, 65 Misc 2d 335 [in which the putative father of a child born out of wedlock was held to lack the standing necessary to initiate a paternity proceeding].) This statutory scheme manifested the assumption that the purpose of a paternity proceeding was to insure the support of the child born out of wedlock (Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260, supra), and thus, promote the welfare of the child. (Schaschlo v Taishoff, 2 NY2d 408.)
II. THE RIGHTS OF PUTATIVE FATHERS
Paternity proceedings in New York State were originally criminal proceedings. (Rheel v Hicks, 25 NY 289; People ex rel. Prior v Prior, 112 Misc 208.) As late as 1962 exclusive jurisdiction over proceedings to establish paternity and provide support for natural children in the City of New York was vested in the criminal court. (Report of *438 Joint Legislative Committee on Court Reorganization, No. 2, Family Court Act; Family Ct Act, § 511.) This allocation of jurisdiction is consistent with the basic purpose of a paternity proceeding — to insure support for the child born out of wedlock. It was long believed that the father of a child born out of wedlock had little interest in such a child. (See Matter of Oritz, 60 Misc 2d 756.) It is only since the 1970’s that the rights of fathers of children born out of wedlock have been recognized. (See, e.g., Caban v Mohammed, 441 US 380; Stanley v Illinois, 405 US 645.)
The New York State Legislature, reflecting these emerging rights of fathers of children born out of wedlock, has enacted numerous laws to assist such persons in exercising those rights. For instance, in 1971 a putative father was given a specific cause of action for custody and visitation where a final order of filiation had been entered in a paternity proceeding. (Family Ct Act, § 549.) And in 1976 the New York State Legislature specifically granted the right to bring a paternity petition to a person alleging to be the father of a child born out of wedlock. (Family Ct Act, § 522.) A judicial gloss has been rendered this amendment by the Appellate Division, Third Department, when the court suggested that a mere preponderance of the evidence rather than entirely satisfactory evidence be required, when a putative father is the petitioner in a paternity proceeding “[s]ince the purpose of the [1976] amendment [giving the father a cause of action] is to permit the acceptance of financial responsibility by the alleged father and not to impose a burden which he disaffirms in proceedings commenced by the mother or others authorized under section 522” of the Family Court Act. (Jaynes v Tulla, 70 AD2d 680, 681.) The mere fact that the putative father of a child born out of wedlock seeks to support a child does not confer upon him all the status and subsequent rights of a person found to be the father of a child born out of wedlock in a declaratory judgment action. (See Matter of Salvatore S. v Anthony S., 58 AD2d 867, supra; Matter of Czajak v Vavonese, 104 Misc 2d 601.)
The facts in this case are distinguishable from the case of Matter of Mitchell (70 AD2d 367), where the father of a child born out of wedlock was seeking to prevent a termi *439 nation of his parental rights by means of an adoption absent a finding of surrender, abandonment or unfitness. In the Mitchell case (supra) the child had been surrendered to the Commissioner of Social Services and was clearly a public charge. For this reason the court unquestionably had the authority to issue an order of filiation and an order of support. (Family Ct Act, § 571.)
Section 1112 of the Family Court Act provides that an appeal may be taken as of right from an order of disposition made pursuant to the Family Court Act. (Ocasio v Ocasio, 49 AD2d 801, app dsmd 37 NY2d 921.) As noted in the commentaries to section 1112 of the Family Court Act (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1112), an order fixing a father’s visitation rights was held not to be an order of disposition in the case of Rizzo v Rizzo (31 AD2d 1001). This case had not been reversed or distinguished. If an order of visitation could be made without the entry of a support order which is considered a final disposition (Matter of Susan W. v Amhad Q., 65 AD2d 594, supra), one party could be left with no appeal of either the order of filiation or the order of visitation. In a case such as the one at bar, this would work a hardship surely unintended by the Legislature.