OPINION OF THE COURT
Edward J. McLaughlin, J.
The court is confronted with a case of first impression. Respondent herein moved for a human leucocyte antigen blood tissue test (HLA test) pursuant to article 5 of the Family Court Act in September of 1981. He failed to appear for the test, which was scheduled on December 3, 1981. On the trial date, January 5, 1982, respondent sought an adjournment. Mindful of the 90-day time standard and two adjournment rule set by the Office of Court Administration, the court refused to grant an adjournment. (Matter of Richard P., 110 Misc 2d 833; Matter of Andre J., 75 AD2d 600.) Petitioner then refused to proceed and demanded a blood test as of right. The court reserved decision.
While the petition was filed by the mother of a child born out of wedlock, petitioner is represented by counsel for the Commissioner of Social Services, since the child for whom a declaration of paternity is sought is on public assistance. Thus, not only the mother and child but the public will be deprived of the costs for supporting the child if the case is dismissed at this time. Accordingly, the court directs that a default judgment be entered against respondent, the disobedient party, pursuant to CPLR 3126 (subd 3).
*295 LAW
I. PATERNITY PROCEEDINGS ESTABLISH LIABILITY FOR THE SUPPORT OF A CHILD BORN OUT OF WEDLOCK
Prior to 1962, when the Family Court Act was adopted, jurisdiction over actions concerning children born out of wedlock was vested in the Children’s Court outside of the City of New York and Special Sessions, a criminal court, within the City of New York. (Report of Joint Legislative Committee on Court Reorganization, No. 2, Family Court Act, § 511, comment 1, p 89.) According to the committee notes of the Joint Legislative Committee which prepared the Family Court Act, the purpose of giving the Family Court Act exclusive jurisdiction over paternity proceedings was “to permit the Family Court to draw upon all its resources in protecting and caring for the innocent child of an illicit relation.” (Id., § 511, comment 2, p 90.) Article 5 of the Family Court Act incorporated the provisions of prior law, both criminal and civil. (See Family Ct Act, §§ 524 [issuance of summons], 526 [issuance of warrant], 531 [respondent shall not be compelled to testify].) The fact that the drafters of the legislation considered it a mechanism for providing support for the child born out of wedlock is reiterated throughout the statute. (Family Ct Act, §§ 513 [obligations of parents], 515 [government obligation to the child], 516 [agreement or compromise], 522 [persons who may originate proceedings], 561 [proceedings to compel support by mother], 562 [proceedings to compel support by mother and father], 563 [paternity and support proceedings combined].)
Prior to the enactment of the Family Court Act it was clear in the case law that a paternity proceeding established the liability of particular persons to provide support for a child born out of wedlock. (Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260, 267.) The Court of Appeals has reiterated this principle many times. (See Matter of Dorn “HH” v Lawrence “II”, 31 NY2d 154; Schaschlo v Taishoff, 2 NY2d 408; Commissioner of Public Welfare of City of N. Y. v Simon, 270 NY 188, mot for rearg den 271 NY 527; People ex rel. Lawton v Snell, 216 NY 527; cf. Matter of Malpica-Orsini, 36 NY2d 568, 573, app dsmd sub nom. Orsini v Blasi, 423 US 1042.) As recently as 1977 *296 an appellate court noted that paternity proceedings are “primarily intended to insure that the child be financially provided for by the putative father and not the State”. (Matter of Salvatore S. v Anthony S., 58 AD2d 867; accord Matter of Kordek v Wood, 108 Misc 2d 434; Matter of Nellenback, 107 Misc 2d 1061; Matter of Czajak v Vavonese, 104 Misc 2d 601; Matter of Bertrand, 100 Misc 2d 439; cf. Matter of Goodrich v Norman, 100 Misc 2d 33.)
II. BLOOD TESTS
It has long been believed that a charge of paternity is easy to make and difficult to defend against. (Burke v Burpo, 75 Hun 568, 570.) In 1981 when the Legislature amended section 532 of the Family Court Act (L 1981, ch 9, § 2) so as to allow the results of the HLA test to be received in evidence to aid in the determination of whether the alleged father is or is not the father of a child when he has not been excluded by other blood tests, New York removed much of the uncertainty from paternity proceedings as far as ascertaining the biological father of a child. The importance of the HLA test in contested paternity proceedings has recently been commented upon favorably by the United States Supreme Court in the case of Little v S treater (452 US 1) where the court expressed confidence in both the reliability of the tests and favorably cited Mr. Justice Brennan’s language in a New Jersey case concerning “ ‘[t]he value of blood tests as a wholesome aid in the quest for truth’ ”. (452 US 1, 8.) A joint committee of the AMA and ABA recommended the use of the HLA tests in disputed paternity proceedings in a report issued in 1976. (Joint AM A-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Fam LQ 247.) Accepted as an aid to the courts in making determinations of paternity, the weight to be given to the results of an HLA test has not been statutorily determined in New York.
In West Germany, where the HLA test has been admissible for some time, the Essen-Moller formula is used to compute the probability of paternity — a 99% plus probability of paternity “bordering on certainty;” a 95-99% being “very probable paternity,” and a 90-95% probability *297 being considered a “weak indication of paternity.” (Sass, Defense of Multiple Access [Exceptio Plurium Concubentium] in Paternity Suits: A Comparative Analysis, 51 Tulane L Rev 468, 474, n 27.) Under 90% is considered meaningless. The German “Federal Supreme Court, with regard to the present stage of biological science, has stated as a guideline that a probability less than 95 per cent would create substantial doubt.” (Id., at p 477.)
Where, as here, no weights are assigned to an HLA finding, it is difficult for the court to assess the weight to be given to the absence of blood typing evidence. Ordinarily if no blood test result was put into evidence, the court would consider the evidence set forth and make its decision based upon the clear and convincing evidence. (Matter of Commissioner of Social Servs. of County of Erie v Hayes, 74 AD2d 731.) Where, as here, the respondent failed to appear for the test he had demanded and petitioner now demands the test to strengthen her case, the remedy to apply is not immediately apparent. For instance, prohibiting the disobedient party from introducing evidence of the blood test results (CPLR 3126, subd 2) or staying the proceeding until respondent takes a blood test (CPLR 3126, subd 3) or dismissing the proceeding (CPLR 3126, subd 3) will not justly remedy respondent’s failure to obey the court’s order to appear for a blood test in December.
III. STANDARDS AND GOALS
In 1975 the Administrative Board of the Judicial Conference promulgated rules for the New York courts, referred to as “Standards and Goals” (Twenty-First Ann Report of NY Judicial Conference, 1976, ch 2). These rules were amended effective April 1, 1979. The rules require that a fact-finding hearing be completed within 90 days of the commencement of a proceeding. There is an exception noted for paternity proceedings — “the standard for paternity proceedings shall commence at the time a blood test is ordered.” In the instant case the order for a blood test was filed and entered on October 16, 1981. Thus, on January 16, 1982, the petition was 90 days old.
The rules also state that “[n]o more than two adjournments shall be allowed prior to fact finding unless ap *298 proved by the designated administrative judge.” In this case an adjournment was granted on August 17, 1981, so that respondent could obtain counsel, and on September 10, 1981 when respondent requested a blood test. Respondent’s motion for an additional adjournment was denied on January 5, 1982, the date set for trial of this matter.
The rules provide the Family Court with the sanctions of contempt of court proceedings and with dismissal of the proceedings, which may be invoked against any party who unnecessarily delays the court proceedings. A dismissal would inconvenience petitioner, who has co-operated with the court and now demands a blood test. Civil contempt (Family Ct Act, § 156) gives the court the power to fine or to imprison a person for misconduct “by which a right or remedy of a party to a civil action * * * pending in court may be defeated, impaired, impeded, or prejudiced”. (Judiciary Law, § 753, subd A.) Contempt need not be deliberate in order for the court to evoke its powers of civil contempt. (Great Neck Pennysaver v Central Nassau Pub., 65 AD2d 616; cf. McNulty v McNulty, 81 AD2d 581.)
Respondent herein demanded that the Department of Social Services pay for the blood test that was ordered, since he had insufficient funds to pay for it himself, so fining respondent would be a futile exercise of judicial authority. Jail sentences for civil contempt tend to be considered punitive and have been found to be an abuse of discretion. (Cf. Matter of Planning Bd. of Town of North Elba v Zoning Bd. of Appeals of Town of North Elba, 75 AD2d 686.)
The Family Court also has powers of criminal contempt (Family Ct Act, § 156) and may hold a person in criminal contempt for the willful disobedience of its lawful mandate. (Judiciary Law, § 750, subd A, par 3.) Here respondent claims that he forgot about the blood test. Contempt proceedings for forgetting to take a blood test would be inappropriate.
IV. CPLR REMEDIES FOR REFUSAL TO COMPLY WITH AN ORDER TO DISCLOSE
When there is no statutory procedure prescribed by the Family Court Act, the CPLR applies. (Family Ct Act, *299 § 164.) A blood test in a paternity proceeding is essentially a discovery device. (Cf. Family Ct Act, § 532; CPLR 3121.) CPLR 3126 sets forth alternative penalties for refusal to comply with an order to disclose. In reviewing these alternatives the court can find but one that will effectively accomplish the public policy goal of obtaining support for the child born out of wedlock, namely, to render a judgment by default against the disobedient party, respondent herein. (CPLR 3126, subd 3.) The court cannot allow respondent by his dalliance to defeat the 90-day standard for completing the fact-finding stage of a paternity proceeding and to also defeat petitioner’s cause of action by his forgetful failure to appear for a court-ordered blood test. In a court where 904 of the 12,331 petitions filed in calendar year 1981 were paternity petitions, allowing such dilatory actions by respondents could seriously hamper the court’s ability to hear its other cases. Nor, can the court allow respondent to evade a paternity action by conveniently “forgetting” to appear for a scheduled blood test. It currently takes numerous months to schedule a blood test in this county. Failure to appear for a test not only slows down the proceeding in which respondent is involved, but also slows down other paternity proceedings which are awaiting blood tests.
Accordingly, the court orders that a default judgment be entered against respondent, declaring him to be the father of the subject child. (CPLR 3126, subd 3.) Petitioner is to prepare an order in accord with this decision. Respondent is advised that he has one year to seek to set aside this judgment. (CPLR 5015.) In balancing the State’s goal of seeking to establish liability for the support of a child born out of wedlock, the court’s goal of disposing of fact-finding hearings within a reasonable time and respondent’s lack of co-operation and disobedience to the court’s order, evoking the remedy of a default judgment should alert respondent to the serious nature of these proceedings and to his affirmative obligation to adhere to court orders.